IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **95-K-2510**

**MORRISON KNUDSEN CORPORATION**
**d/b/a MK-FERGUSON COMPANY, an Ohio Corporation,**

    Plaintiff and Counterclaim Defendant,

v.

**GROUND IMPROVEMENT TECHNIQUES, INC., a Florida Corporation;**

    Defendant and Counterclaim Plaintiff,

_____

ORDER ON PENDING MOTIONS
_____

KANE, J.

This matter is set for a two-week jury trial commencing April 3, 2006. A Final Trial Preparation Conference is set for Friday, March 24th. In order to assist in preparing this case for the long-awaited retrial of GIT's damages on its counterclaim against MK, it is necessary to address a spate of pretrial motions filed in the past 30 or so days so that appropriate time may be devoted to the finalization of jury instructions. These Motions[1] are all in the nature of motions in limine seeking the exclusion of various categories of

---

[1] These Motions include: (1) GIT's *Motion to Exclude Evidence Which Fails to Comply with the Law of the Case and Minimum Standards of Daubert Admissibility* (Doc. 593)(filed 2/2/06); (2) MK's *Motion in Limine Re: Damages* (Doc. 599) (filed 2/21/06); (3) MK's *Motion to Exclude Evidence that Fails to Comply with the Applicable Law and to Exclude Certain Expert Testimony of Alvin M. Cohen* (Doc. 603) (filed 2/22/06); (4) MK's *Motion to Strike the Opinion of Jeffrey S. Busch* (Doc. 604) (filed 2/22/06); and (5) MK's *Motion to Exclude the Testimony of Jeffrey E. Fuchs* (Doc. 605) (filed 2/22/06).

damages evidence or combined motions in limine with additional *Daubert*-style challenges to the admissibility of expert witness testimony on reliability grounds.

In ruling on these Motions, I note the parties submitted a signed and stipulated Final Pretrial Order in this case on June 2, 2005, in which they committed to a deadline for filing *Daubert*-related motions of "[t]hirty (30) days after this Pretrial Order is rendered by the Court or the conclusion of an expert's final deposition, if later." Proposed Pretrial Ord. § XII(d) (emphasis theirs). The parties were to identify anticipated *Daubert* motions in § IX of the Order. Only GIT did so, and even then, only as a general reservation of rights. The Order further provided that "[a]ny such objections not identified in Section IX of this Order and filed by motion by this date are deemed waived." *Id.* § XII(d).

Through an oversight precipitated by the parties' oft-repeated but never culminated representations regarding settlement, the June 2005 Pretrial Order was never formally entered as an order of the court. However, attorneys Gordon, Huff and Schooley signed the proposed Pretrial Order on behalf of all the parties and, until this final group of motions at least, observed the stipulated timelines and deadlines set forth in the Pretrial Order. The depositions of Messrs. Fuchs and Busch were completed in June 2005. The updated depositions of MK's Caruso and GIT's Cohen were completed in December 2005. None of the *Daubert* challenges to these experts was filed within the 30-day deadline, yet none included an explanation for the delay nor a request for leave to file out of time and so close to trial. There is no excuse for ignoring the stipulated 30-day post-

deposition deadline nor for sandbagging the process at this late date. Accordingly, I deem MK's *Daubert* challenges to GIT experts Cohen, Busch and Fuchs – as well as GIT's challenge to MK's expert Caruso – to be WAIVED.

Ultimately this waiver determination prejudices neither side because several of the motions are really not *Daubert* motions at all, and simply seek to preclude experts from testifying to matters no longer at issue under the law of the case. Of these, GIT's Motion challenging the proffered testimony of MK's expert Caruso is the most notable because he, indeed, appears to be prepared to testify to matters no longer at issue in the case.

None of MK's motions, even if they had been timely filed, would have resulted in an order barring GIT's experts from testifying entirely. To the extent MK's challenges impact the scope of a particular expert's testimony or the weight it should be accorded, those issues may be reasserted during the normal flow of witness examination at trial and may result in the issuance of limiting instructions, if appropriate. Specific rulings on the individual experts are included in the discussion of all of the pending motions in limine below.

## Discussion.

Briefly summarized, the procedural history of GIT's claim for damages against MK is as follows. The original MK-GIT Subcontract (the "Contract") obligated GIT to complete the Slick Rock project by December 1996. The original Contract price was $9.3 million. As recounted by the Tenth Circuit on appeal, "the project did not go well" and in September 1995, MK terminated GIT for default and sued GIT in Oklahoma

District Court for damages. *MK v. Fireman's Fund*, 175 F.3d 1221, 1228 (10th Cir. 1999). While requiring GIT to cease work and vacate the site, MK also directed GIT to perform certain cleanup work first and then leave certain equipment behind. MK purportedly retained and used that equipment during the ensuing litigation. *Id.* MK denied almost all of GIT's requests for change orders and to increase its compensation under the Contract. MK also refused to pay GIT for various parts of the completed work and for the post-termination work and retention of equipment. *See id.*

GIT counterclaimed for wrongful termination, seeking damages in the form of payment for completed work and compensation for additional costs occasioned by MK and not contemplated by the contract. *See MK v. Fireman's*, 175 F.3d at 1228. At the same time, GIT's subcontractors were demanding payment from GIT. GIT settled with subcontractor Keers, but at the time of the first MK-GIT trial, GIT was still involved in litigation here in Colorado with a subcontractor called Robinson and had not settled with or paid two other subcontractors Bogue and GA Western. In its counterclaim, GIT also sought damages on behalf of these subs.

In October 1996, shortly before the original trial in the MK-GIT litigation, GIT supplemented its pretrial disclosures and increased the amount claimed under the Contract from $8.4 to $11.4 million. *MK v. Fireman's*, 175 F.3d at 1228. The jury found in favor of GIT on its counterclaim – and against MK on its claim – and awarded GIT $5.6 million in damages. The Tenth Circuit affirmed the jury's determination that GIT was not liable for defaulting under the Contract and that it was MK, instead, that should

be held liable for wrongfully terminating it, but vacated the damages award based on the sufficiency of GIT's evidence to support its $1.35 attorney fees claim and roughly $3 million claim for equitable adjustments and its inability to apportion the damages properly because the jury's was a general, rather than special, verdict . *See id.* at 1242, 1244-45, 1247.  In addition, the Tenth Circuit determined the Contract did not allow GIT to recover on behalf of its subcontractors without having first settled with them (or liquidated their claims in litigation, as with Robinson), which the Court suggested GIT could do before the second trial commenced.  *Id.* at 1249-54 (because it was ordering a new trial on GIT's damage claims, no prejudice would come to GIT's subs under this reading because "GIT and its subs can conclude settlements before that trial").

Thus, the legal status of GIT's dispute with MK is that MK's claim that GIT defaulted its obligations under the Contract has been rejected and MK's termination of the Contract for GIT's "default" has been deemed a "termination for convenience" under federal construction/procurement law.  *MK v. Fireman's*, 175 F.3d 1221, 1243 (10th Cir. 1999)(affirming district court's overall instructing of the jury to award damages under Contract's termination-for-convenience).  MK's actions may be more accurately described as a "constructive" termination for convenience, however, meaning the termination was construed as a termination for convenience over MK's denial that it terminated the contract at all, and that it was its contractor, GIT, who was liable for defaulting on its obligations.  Thus, instead of electing at the outset to terminate the GIT contract under the sort of "no fault" theory that is the gist of a "termination for

convenience," MK sued GIT for breach of contract and GIT successfully defended against that claim on grounds its nonperformance was legally excused. Under such circumstances, the breach of contract claim is constructively converted to a termination for convenience. *See College Point Boat Corp. v. United States*, 267 U.S. 12 (1925)(discussing concept of constructive termination for convenience). The distinction is important here only because the specific procedural history of this claim has become the source for certain law-of-the-case arguments in limine that have caused disagreement and confusion.

In the termination-for-convenience context GIT, as the contractor, is entitled to recover its costs incurred, including profit on work done and costs of preparing the termination settlement proposal, but not any lost profits or other common law breach of contract remedies. *See generally Rhen v. United States*, 17 Cl. Ct. 140 (1989)(explaining difference between damages available to terminated contractor under termination-for-convenience theory as opposed to common law breach of contract theory)(cited in *MK v. Fireman's*, 175 F.3d at 1243, n. 26). "Costs incurred" include costs, and cost increases, reasonably incurred because the government (in this case, MK) increased the amount or difficulty of work required by the contract, or delayed or accelerated that work. *MK v. Fireman's*, 175 F.3d at 1243 (citing John Cibinic, Jr. & Ralph C. Nash, Jr., *Administration of Government Contracts*, p. 669-73 (3d ed. 1995)). It is the amount of GIT's demonstrable costs incurred – including costs incurred in unwinding its relationship with and pursuing payment from MK (attorney and consultant fees), costs

incurred in settlements and disputes with subs, and cost overruns in performing under the Contract ("equitable adjustments") – that forms the crux of the parties' damages dispute on remand.  There is no dispute regarding MK's obligation to compensate GIT for work that the contract required, and that GIT performed, but for which MK has not yet paid. *See MK v. Fireman's*, 175 F.3d at 1243, n. 28.

The parties' various Motions to Exclude evince fundamental disputes regarding the evidence and elements of proof necessary for GIT to recover its claims for fees, equitable adjustments and subcontractor costs.  I endeavor to resolve these disputes below.

1. GIT's **Motion to Exclude Evidence Which Fails to Comply with the Law of the Case and Minimum Standards of Daubert Admissibility** (Doc. 593) (filed 2/2/06).

In this Motion, GIT seeks an order excluding the testimony of MK Expert Tom Caruso on grounds Caruso's testimony is contrary to the prior jury verdict and the law of the case as set forth by the Tenth Circuit in *MK v. Fireman's*.  To the extent Caruso intends to testify regarding responsibility for "critical path" or overall delays in the 22-month Slick Rock project period I agree, and limit Mr. Caruso's testimony to issues related to appropriate damages issues under the Tenth Circuit's opinion remanding the case for retrial.

The parties' dispute regarding the relevance of Caruso's testimony is the result of a fundamental disagreement regarding the proof necessary for the recovery of equitable adjustments under the Contract.  GIT argues "fault" for the delays and cost overruns of

7

the Slick Rock project has already been adjudicated in this case as part of the parties' competing wrongful termination claims such that GIT does not need to re-prove that it was MK, rather than GIT, that "caused" the overruns.  MK disagrees, arguing GIT can recover only for those specific equitable adjustments it proves were caused by MK, and that GIT's evidence in support of its claim that MK's termination of the Contract was "wrongful" is not the same as the proof necessary to prove its entitlement to equitable adjustments to the Contract price.  MK is correct.

GIT is not absolved by virtue of any "law of the case" from its obligation under federal construction law to prove MK *caused* the particular problem or delay for which it seeks equitable adjustment.[2]  The relevant discussion is found at pages 1255 - 1258 of the Tenth Circuit's opinion, where the Court addresses MK's concerns regarding a limited retrial on the issue of damages only.

On appeal, MK invoked the *Gasoline Products*[3] exception to the general rule that a court may limit a new trial to specific issues citing the overlap between issues of liability and damages of the factor of delay.  *See MK v. Fireman's*, 175 F.3d at 1255.

---

[2] The general rule is that contractors must demonstrate "liability, causation and injury" for any equitable adjustments sought.  *MK v. Fireman's*, 175 F.3d at 1244 (citing *Wunderlich Contracting Co. v. United States*, 351 F.2d 956, 968 (Ct. Cl. 1965))(contractor bears burden of proving all three elements to recover specific equitable adjustments).  In this case, I note, "liability" is part and parcel of causation and not an independent element of proof.  GIT may recover for specific items of cost increases upon proof that MK "delayed, accelerated, augmented, or complicated the work, and thereby caused [it] to incur [the] specific additional costs" claimed.  *MK v. Fireman's*, 175 F.3d at 1244.

[3] *Gasoline Prods. Co. v. Champlin Refining Co.*, 282 U.S. 494, 500 (1931).

Specifically, because the question of which party – as between MK and GIT – was responsible for delays was relevant both to the wrongfulness of MK's termination (i.e., GIT's failure to perform under the Contract would be "excused" only if GIT was not at fault for the delays/problems that occurred) as well as to GIT's entitlement to equitable adjustments (under termination-for-convenience clause, GIT may recover only for delays caused by MK), trying only the latter to a new jury while maintaining the vitality of the original jury's findings on the former would cause confusion and an unfair trial. The Tenth Circuit agreed MK's point was "valid," *id.* at 1256, but rejected MK's concerns regarding the potential confusion the overlap would cause the jury.

> In this case, the overlap of the factors bearing on damages and liability is significantly less complete than in *Gasoline Products*. In calculating damages, the second jury will not have to answer the same questions about who was responsible for each delay as the first jury had to answer in deciding liability. Each delay was caused either by GIT, by MK, or by something other than GIT or MK (by "chance," hereinafter). To show that a delay was excusable, and thus helped make the default-termination wrongful, GIT only had to prove that it had not caused the delay. If so, then it did not matter whether the delay was caused by MK or by chance. But to show that a delay is compensable, and can entitle it to damages, GIT must show that the delay was MK's fault. If not, then it does not matter whether the delay was caused by GIT or by chance.

*Id.* (citing Cibinic & Nash, *supra*, at 543-618 (comparing excusable and compensable delays)). The Court contemplated that the jury would be instructed on the requirement of proof of each delay for which adjustment is sought, *see id.* at 1258,[4] and observed that

---

[4] In its concluding paragraph, in fact, the Tenth Circuit explicitly directed the district court in the retrial to instruct the jury "to examine each of GIT's equitable -adjustment claims based on delay [and] . . . . determine whether MK caused each delay in a manner unauthorized by

9

because the issue of delay relevant to liability and delay relevant to equitable adjustment were "essentially independent, there is little reason to think that a prior verdict of wrongful termination will confuse or inhibit a second jury in determining the equitable adjustments, if any, to which GIT is entitled." *Id.*[5]

Accordingly, it is incumbent on GIT on the damages retrial to prove up its equitable adjustments – i.e., to prove that MK "somehow delayed, accelerated, augmented, or complicated the work, and thereby *caused* [it] to incur [the] specific additional costs" claimed. *MK v. Fireman's*, 175 F.3d at 1244 (emphasis mine). Indeed it was GIT's failure, in the initial trial, to prove "how MK's actions specifically caused GIT to incur the costs claimed in its damage exhibits [or to] . . . . present evidence that those costs were reasonable" that precipitated the vacatur of the original damage award. *Id.* at 1245. To the extent Caruso intends to testify on these types of delays, accelerations, augmentations or complications, and the parties' respective responsibility

---

the contract. If so, the jury must further determine whether the delay caused GIT to incur allowable reasonable, allocable costs." *Id.* at 1261.

[5]    The Court continued that "there is, indeed, no need to instruct the jury in the new trial on damages that the termination was "wrongful" [because] [t]hat fact is not relevant to the jury's task of determining whether GIT is entitled to equitable adjustments based on delay, and in what amount." *MK v. Fireman's*, 175 F.3d at 1258. I remind GIT that the Tenth Circuit's opinion in this case contemplated the theoretical possibility that the second jury might find *none* of the delays for which GIT seeks adjustment were MK's fault, and award GIT no damages in that category. *Id.* at 1257. Such a determination would not have to be inconsistent with the law of the case regarding the wrongfulness of MK's decision to terminate the Contract because one might reconcile the two by "assuming that there were enough excusable delays to account for GIT being behind schedule, but there were no delays which were MK's fault and which caused GIT to incur specific, reasonable costs. *Id.*

for causing them, he may do so.  He may not, however, offer any testimony regarding "critical path" or overall delays relevant to the excusability or inexcusability of GIT's nonperformance, or the wrongfulness or propriety of MK's decision to terminate the Contract.  These issues are simply not relevant to the limited damages issues on retrial.

GIT's Motion to Exclude Evidence which Fails to Comply with the Law of the Case is **GRANTED** in limited part as discussed above and **DENIED** in all other respects.  The characterization of this Motion as raising *Daubert* issues is inapt, but to the extent any genuine *Daubert* challenge is being made to methodologies employed by Mr. Caruso, they are untimely and deemed to have been **WAIVED**.

2.      MK's **Motion in Limine Re: Damages**  (Doc. 599) (filed 2/21/06).

This is not a *Daubert*-related motion but a preemptive effort to strike GIT's evidence quantifying its damages on grounds that GIT cannot establish the prerequisite element of causation.  Specifically, MK asks that I exclude "any testimony of GIT's claimed damage amounts until GIT first presents *prima facie* evidence establishing that MK's actions caused GIT to incur specific, additional costs."  Mot. at 1.

The Contract requires that all substantive legal issues, including damages, be determined in accord with the body of federal procurement law.  In addition, GP 55H, part of the contract's termination-for-convenience clause, provides that "[t]he cost principles and procedures of FAR, Part 31 . . . shall govern all costs claimed, agreed to, or determined under this article."  *MK v. Fireman's*, 175 F.3d at 1242.  As the Tenth Circuit in its opinion observed, GIT bears the burden of proving damages in accord with

the Contract "'with sufficient certainty so that the determination of the amount of damages will be more than mere speculation.'" *Id.* (citations omitted). This means MK is not obliged to present evidence attacking items of damages if GIT does not make a *prima facie* showing that the items are properly included in its claim.

To recover equitable adjustments under the termination-for-convenience clause of the Contract, GIT must present "'specific, persuasive evidence or analysis demonstrating how any . . . action [by MK] . . . caused [its overruns].'" *MK v. Fireman's*, 175 F.3d at 1248 (quoting *Hoffman Constr. Co. of Or. v. United States*, 40 Fed. Cl. 184, 201 (1998)). GIT must present "'more than general, unsubstantiated pronouncements from its own witnesses that various acts of the government cause . . . overruns.'" *Id.* GIT, moreover, must not only prove that MK specifically caused its increased costs, but must prove that those costs were "reasonable, allowable, and allocable to the contract." *Id.* (citing *McDonnell Douglas Corp. v. United States*, 40 Fed. Cl. 529, 536 (1998) and 48 C.F.R. §§ 31.201-1 to 201-4 (requiring and defining allowability, reasonableness, and allocability)). *See id.* at 1261.

Whatever the merits of MK's Motion regarding damages, I will not prejudge the sufficiency of GIT's evidence or preclude GIT from proving the existence or reasonableness of its increased costs before it proves causation. GIT's elements of proof are fixed; the order in which it presents evidence to support them is not. Accordingly, MK's Motion Limine re: Damages is **DENIED**. It may be reasserted, if appropriate, in a JMOL Motions under Fed. R. Civ. P. 50(a) or (b) at the conclusion of GIT's evidence.

3. MK's **Motion to Exclude Evidence that Fails to Comply with the Applicable Law and to Exclude Certain Expert Testimony of Alvin M. Cohen** (Doc. 603) (filed 2/22/06).

This Motion is a combined motion in limine seeking to exclude evidence of various categories of attorney fees GIT hopes to recoup as equitable adjustments and a *Daubert*-related challenge to GIT's fee expert, Alvin M. Cohen. Specifically, MK contends Mr. Cohen "lacks a sufficient basis for opining as to the reasonableness of fees incurred by GIT in trying to settle certain claims," Mot. at 16, 12, and seeks an order excluding him from testifying at trial. As set forth above, MK's *Daubert* motion is untimely and deemed **WAIVED**. However, it is clear MK's concerns – i.e., that Mr. Cohen cannot give a reliable opinion about the reasonableness of attorney fees incurred in settlement negotiations when he admits in his deposition that he did not know the nature of the claims being settled – go to the weight of Mr. Cohen's opinions, not their admissibility under FRE 702, and MK's *Daubert*-based challenge to Mr. Cohen's testimony is denied on that alternative basis as well.

The in limine portion of MK's motion requires closer scrutiny and a legal determination as to the proper scope of attorney fees recoverable under the termination-for-convenience provision of the Contract. MK seeks to exclude GIT's evidence under several categories of attorney fees requested, including: Fees incurred before the first jury's wrongful-termination decision; fees incurred after MK's bankruptcy; fees incurred in seeking to compel DOE to attend a settlement conference; fees incurred by GIT's surety, Fireman's Fund, during litigation with MK; fees incurred in defending the lawsuit

by Robinson; and travel expenses incurred by GIT's out-of-state counsel. I grant the Motion in part and deny it in part.

MK relies on *Kalvar Corp., Inc. v. United States*, 543 F.2d 1298 (Ct. Cl. 1976) to argue any attorney fees incurred by GIT prior to the first jury verdict in this case are not recoverable because it was the verdict that triggered the termination for convenience clause. MK's argument cuts too narrowly. The effect of the Tenth Circuit's decision on the appeal of the jury's verdict was to convert MK's termination of the GIT contract to a "termination for convenience" *effective as of the time of MK's original termination*, not from the date the jury first determined it was MK, rather than GIT, who was responsible for the contract's failure. Fees incurred before the wrongful-termination decision are not excludable on the grounds urged.

With regard to any request by GIT for attorney fees incurred after MK's bankruptcy, neither side has presented a cogent argument why those fees should be included or excluded under federal procurement law. The parties should come to the final trial preparation conference prepared to argue this point, and I reserve ruling on this category of attorney fees for then.

GIT's settlement efforts involving DOE and attempting to secure DOE's attendance at settlement conference are recoverable and MK's request to exclude these fees is rejected.

Fees incurred by GIT in settling indemity costs with Fireman's may be recoverable, but I would like additional argument regarding this category of fees at

Friday's final trial preparation conference as well.  GIT is reminded that its damages are limited to those recoverable under the Contract's termination-for-convenience provision and relevant FAR and case law.  GIT is specifically precluded from seeking, as damages, items only recoverable under a common law breach of contract theory, which is no longer viable under the law of the case.

GIT's fees incurred in litigation with RN Robinson are recoverable under FAR § 49.108-5.  MK's attempt to distinguish the Robinson litigation from subcontractor litigation that is recoverable under that section is unpersuasive.

MK's arguments regarding GIT's request for travel expenses for out-of-state counsel seem petulant and the citation to my ruling in *Ramos v. Lamm*[6] inapt.

MK's Motion to Exclude Evidence (re attorney fees) (Doc. 603) is **GRANTED** in part and **DENIED** in part and held **UNDER ADVISEMENT** in part as described.

4. MK's **Motion to Strike the Opinion of Jeffrey S. Busch** (Doc. 604) (filed 2/22/06).

Mr. Busch shall be allowed to testify as to GIT's allowable, allocable, and reasonable costs/equitable adjustments in accordance with the analysis and rulings set forth in section 1 above regarding Mr. Caruso above.  MK's challenges to Mr. Bush, while not without merit, go largely to the weight of his testimony, not its admissibility, and MK may make its points on cross-examination.

---

[6] *Ramos v. Lamm*, 539 F. Supp. 730, 754 (D. Colo. 1982)(Kane, J.)(disallowing attorney travel expenses in Colorado state prisoner civil rights action under 42 U.S.C. § 1988 for out-of-state counsel's travel to Colorado for trial).

MK's Motion to Exclude the Testimony of Mr. Busch is **DENIED**.

5.  MK's **Motion to Exclude the Testimony of Jeffrey E. Fuchs** (Doc. 605) (filed 2/22/06).

Mr. Fuchs shall be allowed to testify as to GIT's allowable, allocable, and reasonable costs/equitable adjustments in accordance with the analysis and rulings set forth in section 1 above regarding Mr. Caruso above. Again, MK's arguments affect the weight, not admissibility of Mr. Fuchs's testimony and it may make its points during cross-examination. The Motion to Exclude Mr. Fuchs's testimony is also **DENIED.**

To the extent the parties seek to avoid the impact of my waiver determination with respect to their various "*Daubert*" challenges to each other's experts by filing a new proposed "Pretrial Order" in this case on Friday, March 17, that effort is rejected. Their signed agreement to comport with deadlines they negotiated and agreed to maintain has the effect of binding them and they are estopped to deny or negate that agreement at this late date. Nevertheless, an accurate and updated statement of claims and defenses provides an important road map for trial and I will enter the revised Pretrial Order as an order of the court. Again, my decision to enforce the timelines for filing *Daubert* motions agreed to by the parties in June 2005 does not affect my rulings on the various motions asserted because none was truly a *Daubert* challenge to expert methodology, and each Motion was resolved on its merits as a motion in limine.

IT IS SO ORDERED.

Dated this 20th day of March, 2006, at Denver, Colorado.

        **s/John L. Kane**
        SENIOR U.S. DISTRICT JUDGE