IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **95-cv-2510-JLK**

**MORRISON KNUDSEN CORPORATION**
**d/b/a MK-FERGUSON COMPANY, an Ohio Corporation,**

 Plaintiff and Counterclaim Defendant,

v.

**GROUND IMPROVEMENT TECHNIQUES, INC., a Florida Corporation;**

 Defendant and Counterclaim Plaintiff,
_____

**ORDER CONTINUING TRIAL**
_____

KANE, J.

 It is Friday morning at 10:00 a.m. After a ten-hour day yesterday toiling over the parties' final set of proposed jury instructions and working on them for two hours already today, I have no meaningful option in this case other than to vacate Monday's trial date. Trial will be reset to May 8, 2006, for a period of two weeks only, and if that date is not workable for the parties, to August 2006. The instructions – which the parties were ordered to resubmit as a single document, after conferring with each other and incorporating the rulings made in my 3/20/06 Order on Pending Motions (Doc. 623) – were filed piecemeal, in a disorganized gunshot fashion incorporating numerous repetitive, incorrect and hypertechnical instructions to which droning, repetitive objections were made. On most of the salient issues of law, there is complete and utter disagreement. GIT's submission attempted to gather many of the proposed instructions in

some sort of unified document, but did not include a significant number of MK's.  MK's submission was therefore filed separately, initially as a series of separate  electronically submitted files comprised of one jury instruction and then, after conferring with my staff, as a single electronic file.

This case was remanded from the Tenth Circuit for a retrial of GIT's damages under a termination-for-convenience analysis in 1999.  After numerous delays based on the parties' representations regarding settlement, expert discovery and several rounds of dispositive and clarifying motions practice, the parties submitted their stipulated proposed pretrial order in June 2005 and the case was set for trial in January 2006.  In December, when it became clear my trial in the Rocky Flats plutonium contamination class action would continue through the January trial date set in this case, I vacated the trial date and reset it for April 3, 2006.  It was fortunate I did, because despite their represented readiness for trial at the time of their June 2005 pretrial order, the parties were clearly completely unprepared for trial.  Significant, dispositive disputes apparently abounded. Between December 8, 2005 and March 30, 2006, the parties filed nine substantive motions seeking judgment as a matter of law on various issues, challenging experts, and with respect to MK, at least, seeking to exclude virtually every aspect of the other's evidence.  (*See* Doc. Nos. 578, 582, 593, 599, 603, 604, 605, 627, 638.)  Seven of the nine motions were filed *after* the original January trial date.  With so many significant issues unresolved, it strains credulity to think the parties were ready for trial in January.

It is clear now that the continuance did nothing to increase the parties' readiness

for trial. Having undertaken the difficult task of resolving the parties' myriad issues – some of which were only fully briefed two days before – I issued a comprehensive order delineating both the issues for trial and the scope of expert and related evidence, rejecting GIT's repeated assertions regarding the continuing availability on retrial of common law damages for bad faith breach of contract and clarifying the standard of proof for equitable adjustments, attorney fees and sub tier contractor judgments and settlements (Doc. 623, dated 3/20/06). As a follow up to that Order, I issued a Minute Order the same day (Doc. 624) requiring the parties to "resubmit their stipulated and proposed jury instructions, in conformance with the rulings therein." I specifically required the parties "to collaborate and endeavor to maximize the number of stipulated instructions," and asked that the reconfigured instructions be filed with the court and submitted in editable (not .pdf) format to chambers before noon Tuesday, March 28th. *Id.* While the parties may indeed have strived to do so, they were completely unsuccessful.

Section IV of my standard Pretrial Procedures Memorandum includes a detailed discussion of my expectations regarding the preparation of jury instructions. In addition, parties are sent a separate memorandum devoted exclusively to the preparation of jury instructions, including organization, structure and the presentation of objections and counterproposals. The submissions are to be in a single, consecutively page-numbered document incorporating all of the parties' stipulated and objected-to instructions in proper order. They are to include my standard instructions in their appropriate place, and they are to include points and authorities both in support of stipulated instructions as well as

3


for trial. Having undertaken the difficult task of resolving the parties' myriad issues – some of which were only fully briefed two days before – I issued a comprehensive order delineating both the issues for trial and the scope of expert and related evidence, rejecting GIT's repeated assertions regarding the continuing availability on retrial of common law damages for bad faith breach of contract and clarifying the standard of proof for equitable adjustments, attorney fees and sub tier contractor judgments and settlements (Doc. 623, dated 3/20/06). As a follow up to that Order, I issued a Minute Order the same day (Doc. 624) requiring the parties to "resubmit their stipulated and proposed jury instructions, in conformance with the rulings therein." I specifically required the parties "to collaborate and endeavor to maximize the number of stipulated instructions," and asked that the reconfigured instructions be filed with the court and submitted in editable (not .pdf) format to chambers before noon Tuesday, March 28th. *Id.* While the parties may indeed have strived to do so, they were completely unsuccessful.

Section IV of my standard Pretrial Procedures Memorandum includes a detailed discussion of my expectations regarding the preparation of jury instructions. In addition, parties are sent a separate memorandum devoted exclusively to the preparation of jury instructions, including organization, structure and the presentation of objections and counterproposals. The submissions are to be in a single, consecutively page-numbered document incorporating all of the parties' stipulated and objected-to instructions in proper order. They are to include my standard instructions in their appropriate place, and they are to include points and authorities both in support of stipulated instructions as well as

each side's respective objections.  As set forth in my Pretrial Procedures Memorandum at p 9, the preparation of "<u>thorough, thoughtful and sensible jury instructions is of paramount importance to me</u>." (Emphasis original.)  I require the parties to prepare and submit their proposed instructions in advance of the *pretrial* conference, as a normal rule, "so they can devote the time necessary for this crucial task before trail pressures intervene." *Id.*  All objections and all issues are to be resolved *before* trial, "so that I may instruct the jury in full before opening argument and again as appropriate during and at the end of trial." *Id.*  Counsel's ineffectiveness in this regard is completely responsible for this second delay in the trial in this case and all of its attendant costs to their clients.

I am sending the parties new copies of my Pretrial Procedures Memorandum and my Memorandum on the preparation of jury instructions.  I will also send copies of the substantive instructions I have revised to date.  The parties shall meet, confer and prepare a new submission, in a single, integrated document, of their proposed jury instructions in this case in conformance with my requirements.  This document shall include all of the instructions, including my standard instructions, the parties' stipulated instructions with authority and their proposed instructions, with objections and authority for and against.  The proposed instructions to which objections are made shall be incorporated, as alternative proposals, in the proper place in the instructions where they would appear when approved or finalized.

The Substantive Instructions (Section 3.0) shall begin with the attached revised "Nature of the Claim" and "Measure of Recovery" instructions and the remaining

instructions in that section shall be organized according to the categories set forth in the latter.  Specifically, the instructions shall be organized such that immediately following the "Measure of Recovery" instruction will be instructions governing all of GIT's cost recovery categories generally, followed by instructions defining terms and concepts in Category 1, followed by instructions on the concepts in Category 2, followed by instructions on equitable adjustments (Category 3).  Technical concepts such as Category 1's "Loss Ratio Adjustment" should be set forth in plain terms and not require the jury to engage in significant mathematical analysis.  That is a function for an expert (or competing expert witnesses) to perform, if possible, and for the jury to accept as fact or not.

In sum, the parties are advised to rethink the nature of their cases for and against various cost categories of GIT and to cooperate in the preparation of jury instructions that will assist the jury in making its determinations within those various cost categories.  The instructions and efforts marshaled to date fall far short of my expectations and will not be tolerated.  If the parties' resubmitted instructions do not meet those expectations, I may strike the jury demand as a sanction and require the parties to try their case to me as factfinder.

Based on all of the foregoing,

1.     The April 3, 2006 trial date is VACATED;

2.     A ten-day jury trial is RESET to commence at 8:30 a.m. Monday, May 8th, 2006;

3.     The parties shall file their RESUBMITTED JURY INSTRUCTIONS, in a single

document and in conformance with this Order and my Pretrial Memorandum and Instructions for Preparing Jury Instructions, on or before April 14th, 2006. Failure to do so or failure to submit jury instructions that are clear and workable may result in the striking of the jury demand and a trial to the bench. If the jury demand is not stricken as a sanction, other sanctions may be imposed.

Dated March 31, 2006.

        **s/John L. Kane**
        SENIOR U.S. DISTRICT JUDGE

## INSTRUCTION NO. 3.1

### Nature of the Claim - Reimbursement under G 55 Termination-for-Convenience Clause

The general rule in government construction law is when the government terminates a contract for its convenience, the contractor should be compensated fairly for the work done and the preparations made for the terminated portions of the contract, including a reasonable amount for profit. Typically, the contractor is entitled to recover all of its incurred costs and settlement costs, and reasonable profits if warranted.

In this case, MK stood in the shoes of the government in its contract with GIT, and GIT was its contractor. Accordingly, and to the extent it meets its burden of proof regarding each category, GIT is entitled to recover its "incurred costs," its "settlement costs," and its "reasonable profits," if warranted, on the MK-GIT Contract. You will be instructed in more detail on these damage categories in the the instructions that follow.

**INSTRUCTION 3.2**

**Measure Of Recovery - Termination for Convenience - All Categories (GP 55)[1]**

The termination-for-convenience provisions of GP-55 define[2] the amounts GIT may recover in this action.  Specifically, GIT is entitled to recover the following costs:

1.  For its work performed under the MK-GIT Contract before the effective date of termination, the total (without duplication of any items) of:

> a.  The cost of this work;
>
> b.  The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the Contract; and
>
> c.  A sum, as profit on subparagraph (1)(a) above, if warranted.[3]  However, if it appears that GIT would have sustained a loss on the entire Contract had it been completed, then GIT shall not be entitled to any profit under this subparagraph (1)(c).

---

[1]  The revised instruction is a combination of the parties' related proposed instructions.  GIT's assertion that it is entitled to common-law breach of contract damages, including anticipated profits, is expressly rejected.  *See MK v. GIT*, 175 F.3d at 1243 (affirming Judge Cauthron's refusal to submit common law bad faith breach of contract claim to first jury for lack of evidence to support.  No common law theory of relief is before the court or the new jury on remand.

[2]  omitted "and limits," as proposed by MK, on grounds the qualifier is unnecessary.

[3]  MK's proposed language provides for profit "determined by MK to be fair & reasonable."  The proposed language – presumeably based on 48 C.F.R. § 49.202 – applies in settlement situations where parties are negotiating this up front.  In litigation context, it is nonsensical to leave amount of allowable profit to discretion of the contractor's adversary, and the "if warranted" language from *McDonnell Douglas*, 40 Fed. Cl. 529 at 534, is preferable.

    2. The reasonable cost of settlement of the work terminated, including:

        a. Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals with MK and supporting data;

        b. Costs associated with the termination of and settlement with lower-tier subcontractors;[4] and

        c. The cost for storage, transportation, and other expense items incurred that were reasonably necessary for the preservation, protection or disposition of the termination inventory and equipment.

    3. From the total amount you award for paragraphs 1 and 2 above, you shall subtract the total of payments previously made to GIT by MK.

In addition, GIT is also entitled to seek, and if proven to recover from MK, so-called "equitable adjustments" to the Contract to reflect cost increases caused by MK before the effective date of termination. Specifically, equitable adjustments are increases in the Contract price incurred by GIT because MK increased the amount or difficulty of the work, accelerated or sped up GIT's performance of the work, added to or complicated the work to be performed, or required GIT to leave materials and equipment on site for MK to use after the contract was terminated. GIT is also entitled to overhead and reasonable profit, if warranted, on its equitable adjustments.

If you find no damages in favor of GIT against MK must still assess nominal damages in the amount of one dollar.

---

    [4] Omitting MK's proposed exclusion of settlement amounts.