IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **95-cv-02510-JLK**

**MORRISON KNUDSEN CORPORATION**
**d/b/a MK-FERGUSON COMPANY, an Ohio Corporation,**

      Plaintiff and Counterclaim Defendant,

v.

**GROUND IMPROVEMENT TECHNIQUES, INC., a Florida Corporation;**

      Defendant and Counterclaim Plaintiff,

_____

ORDER ON CATEGORY 1(C) PROFIT/COST ADJUSTMENT JURY
INSTRUCTIONS

_____

KANE, J.

      In working through the jury instructions for use in the so-called damages retrial in

this case, I am struck by the inappropriateness of some of these issues for a jury and in

particular, the issue of profit/loss adjustment in Category 1(c) of the overall cost recovery

Instruction 3.2.  MK's insistence on a series of instructions ostensibly under GP-55

subpart F(1)(c) and 48 C.F.R. §  49.203(a) requiring the "jury" to eliminate an award of

profit under certain circumstances and to adjust down GIT's cost recovery overlooks (1)

the fact that any adjustments are to sums to which contractors are *presumptively* entitled

in a termination-for-convenience context; (2) that the regulations governing termination-

for-convenience address factors the *government* (MK) is to consider in arriving at "fair

compensation" of terminated contractors in a process of *settlement* and *negotiation* (*see*

48 C.F.R. §  49.1, 49.2, 49.201(a) & (b)); and (3) the fact that no loss adjustment is

warranted *at all* if the government (again, MK) is responsible for the cost increase, if the

contractor is excused from performing because of impossibility or if the contractor is

entitled to an equitable adjustment that takes the contract out of the loss position.

Arguably, MK's responsibility for GIT's nonperformance is law of the case such that loss

adjustment is not even available under the termination-for-convenience regulations made

a part of the parties' contract in GP-55.[1]

Profit is presumed in a termination for convenience context and, while a contractor

has the burden of proving both the estimated cost to complete a contract and the rate of

profit, it is appropriate and precedented for the government (here, MK) to prove that the

contractor would have been in a loss position at completion "since it is seeking to reduce

the contractor's recovery." Cibinic & Nash, *Administration of Government Contracts* at

1129 (citing *Systems & Computer Info., Inc.*, ASBCA 18458, 78-1 BCA ¶ 12,946).

Section 202 of the regulations addresses principles for the *government* to consider in

determining what is "fair compensation" in the context of *settling* with a terminated

contractor. Section 202(a) sets forth no "factors" that a contractor or anyone else must

prove, and the "factors" that are identified in § 202(b) are factors the government and its

contractor should consider "in *negotiating* or determining profit [emphasis mine]."

---

[1]     My rulings in the March 20, 2006 Order on Pending Motions are entirely
consistent with this determination. There, I concluded the question of whether GIT's
nonperformance under the Contract was excused or not excused was irrelevant to the question of
whether MK is responsible for specific delays or cost increases necessitating equitable adjustment.
The question of whether GIT or MK was responsible for GIT's failure to perform was a question
fact answered in GIT's favor by the original jury in this case.

Most importantly, however, is that *no* loss adjustment will be made "if the Government  [MK] is responsible for the cost increase [citation omitted]; or if the contractor is excused from performing because of impossibility [citation omitted] . . . . [or if the] contractor is entitled to an equitable adjustment that takes the contract out of the loss position."  Cibinic & Nash, *supra* (citing cases).  Under the circumstances, I am hard pressed to agree with MK that the loss adjustment issue is properly at issue in this case at all.

I will abstain from striking the Category 1(c) caveat and removing related jury instructions on the caveat until hearing on the issue at the May 1 reconvened final trial preparation conference.   In the interim, MK should give careful consideration to withdrawing its claim for a loss adjustment.  If MK insists on trying the issue of loss adjustment to the jury and I am somehow convinced that the issue is not precluded by the law of the case, I will instruct the jury according to the Cibinic & Nash treatise and may decide that the jury answer the necessary precursors to the application of any loss adjustment ratio in the form of special interrogatories, leaving any actual application of the adjustment for post-trial proceedings after the jury has been released.

Dated this 21st day of April, 2006, at Denver, Colorado.

s/John L. Kane
SENIOR U.S. DISTRICT JUDGE