IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge John L.  Kane

Civil Action No.  **95-cv-2510-JLK-BNB**

**MORRISON KNUDSEN CORPORATION,**
**d/b/a MK-FERGUSON COMPANY,**
**an Ohio corporation,**

      Plaintiff and Counterclaim Defendant,

v.

**GROUND IMPROVEMENT TECHNIQUES, INC.,**
**a Florida corporation,**

      Defendant and Counterclaim Plaintiff.

_____

**JUDGE'S RULINGS ON JOINT SUBMISSION OF STIPULATED AND
DISPUTED JURY INSTRUCTIONS**
_____

**Section 1.0**

**General Instructions**

**TENDERED BY GIT**
**INSTRUCTION NO.  1.1**

**<u>Description of the Case</u>**

In order to help you understand this case, I will give you a brief description of the parties and the claims in this lawsuit.

This case involves a contract dispute between Ground Improvement Techniques, which I will refer to as "GIT" and Morrison Knudsen Corporation, which was also known as MK Ferguson Company at one time.  Today, Morrison Knudsen is known as Washington Group International.  For the sake of clarity, I will refer to Morrison Knudsen as "MK."

The dispute between the parties arises from a construction project located at Slick Rock, Colorado.  The United States Department of Energy hired MK in 1983 as its construction manager for the DOE's uranium mill tailings remedial action project.  During the course of this trial you will hear this program referred to as the "UMTRA" project.  The UMTRA project was a government funded cleanup of uranium mill tailings at sites around the country, including the ones at Slick Rock.

MK contracted with GIT to remediate the Slick Rock sites pursuant to a written contract which was signed on March 2, 1995.  The contract provided that work would be completed by December 15, 1996.  On September 29, 1995, seven months into the twenty two month period of performance under the contract, MK terminated its Subcontract with GIT.  In November of 1996, the termination of the subcontract was constructively converted to a termination for convenience.

Termination for convenience clauses are typical in government contracts, and are designed to define the rights and obligations of the parties when a contract is terminated for

3

convenience prior to the completion of the work.  A termination for convenience entitles GIT to recover certain costs associated with and arising from the termination of the contract.

The dispute between the parties in this case is about how much is due to GIT by virtue of the termination for convenience.  GIT's recovery of costs is governed by the body of law applicable to the procurement of goods and services by the government and other legal principles, on which I will instruct you during this case.

In the termination for convenience context, GIT is entitled to recover its costs incurred, including profit on the work done, the settlement of lower tier subcontracts, and the costs of contract settlement proposals.  In this context costs incurred includes costs, and cost increases, reasonably incurred because the government (in this case MK) increased, augmented, or complicated the amount or difficulty of the work required by the contract, or accelerated that work.

It is the amount of GIT's demonstrable costs incurred - including costs incurred in unwinding its relationship with and pursuing payment from MK (attorney and consultant fees), costs incurred in settlements and disputes with subs, and cost overruns in performing under the Contract (what are known as equitable adjustments)- that are the heart of the dispute between the parties.  There is no dispute regarding MK's obligation to compensate GIT for work that the contract required, and that GIT performed, but for which MK has not paid.

**INSTRUCTION NO. 1.2**

**<u>Equality of Parties</u>**

All persons are equal before the law regardless of race, national origin, citizenship, or even whether the party is a corporation.  I tell you that all parties are equal before the law to remind you that you must base any decision in this case on the law and facts, not outside factors such as race, national origin, citizenship, or corporate status.

**INSTRUCTION NO. 1.3**

**Status of a Corporation**

All persons are equal before the law.  A corporation is considered by the law to be a person.  Corporations are entitled to the same fair and conscientious consideration by you as any physical person.

Corporations can act only through their officers and employees.  Any act or omission or an officer or employee while acting within the scope of his or her employment or authority is the act or omission of the corporation.

.

**INSTRUCTION NO. 1.4**

**Knowledge of a Corporation**

Knowledge of, or notice to, a corporation's director, officer, or employee received while he or she is acting within the scope of his or her authority, is the knowledge of, or notice to, the corporation.

**INSTRUCTION NO.  1.5**

**<u>Scope of Authority – Defined</u>**

A director, officer, or employee is acting within the scope of his or her authority when he or she is doing the work assigned by his or her employer, or is doing that which is proper, usual, and necessary to accomplish the assigned work, or is doing that which is customary in the particular trade or business to accomplish the assigned work.

## INSTRUCTION NO.  1.6

### **Evidence - General**

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You will hear the evidence, decide what the facts are, and then apply those facts to the law I give you.  That is how you will reach your verdict.  In doing so, you must follow the law whether you agree with it or not.

At no time during the trial will I suggest what I think your verdict should be nor do I want you to guess or speculate about my views of what verdict you should render.

You will decide what the facts are from the evidence which the parties will present to you during the trial.  That evidence will consist of the sworn testimony of witnesses on both direct and cross-examination, regardless of who called the witness; documents and other things received into evidence as exhibits; and any facts on which the lawyers agree or which I may instruct you to accept as true.

The following things are **not** evidence and you must not consider them as evidence in deciding the facts of this case:

1.      Statements and arguments by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts controls.

2.      Questions and objections by the lawyers are not evidence.  Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, I may allow some testimony or exhibits only for a limited purpose, and you must consider such only for that limited purpose.

4.      Anything you may see or hear when the Court is not in session is not evidence, even if what you see or hear is done or said by one of the parties or by one of the witnesses.  You are to decide the case solely on the evidence received in this courtroom during the trial.

You are to consider only the evidence in the case.  But in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify.  You are permitted to draw, from facts that you find have been proved, such reasonable inferences as seem justified in the light of your experience.  Inferences are deductions or conclusions your reason and common sense lead you to draw from the facts established by the evidence in the case.

.

**INSTRUCTION NO.  1.7**

**Evidence - Direct and Circumstantial**

There are two kinds of evidence: direct and circumstantial.  Direct evidence is testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is indirect evidence; that is, it is proof of one or more facts from which one can find that another fact exists or is true.

You should consider both kinds of evidence in deciding this case.  It is for you to decide how much weight to give to any evidence, direct or circumstantial.

There are rules of evidence that control what can be received into evidence.  When one lawyer asks a question or offers an exhibit into evidence and another lawyer on the other side thinks that it is not permitted by the rules of evidence, the other lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore such evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

**INSTRUCTION NO.  1.8**

**Credibility of Witnesses**

In deciding the facts of this case, you will have to decide which witnesses to believe and which witnesses not to believe.  You may believe everything a witness says, only part of it, or none of it.

In considering the testimony of any witness, you may consider:

1.      The witness's opportunity and ability to see or hear or know the things to which the witness testified;

2.      The quality of the witness's memory,

3.      The witness's manner while taking the oath and while testifying;

4.      Whether the witness had an interest in the outcome of the case or any motive, bias or prejudice;

5.      Whether the witness's testimony is contradicted by anything the witness said or did at another time, by the testimony of other witnesses, or by other evidence;

6.      How reasonable the witness's testimony was in light of all the evidence; and,

7.      Any other facts that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify to that fact.

If you believe a witness has willfully lied regarding any material fact, you have the right to disregard all or any part of that witness's testimony.

**INSTRUCTION NO.  1.9**

**<u>Single Witness</u>**

The testimony of a single witness that produces in your minds belief in the likelihood of truth is sufficient for the proof of any fact, and would justify a verdict in accordance with such testimony, even though a number of witnesses may have testified to the contrary, if, after consideration of all the evidence in the case, you hold greater belief in the accuracy and reliability of the one witness.

**INSTRUCTION NO.  1.10**

**Juror Conduct**

I will now say a few words about your conduct as jurors.

First, do not talk with one another about this case or about anyone who has anything to do with it until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case or about anyone who has anything to do with it until the trial has ended and you have been discharged as jurors.  "Anyone else" includes members of your family and your friends.  You may tell them that you are a juror in a case and that I have ordered you not to tell them anything else about the case until I have discharged you.

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it.  If someone tries to talk to you, please report it to me immediately.

Fourth, do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with the case.

Fifth, do not do any research, such as consulting dictionaries or other reference materials, and do not make any investigation about the case on your own.

Sixth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

Seventh, each of you will have one or more notebooks containing the names of the witnesses and copies of exhibits.  You are free to take notes in order to enhance your memory or assist you in recollecting during your deliberations.  I caution you, however, not to become a

slave to your notes.  It is most important that you observe the witnesses and listen to their testimony.  Your note taking should merely assist you.

**Section 2.0**

**Instructions for Use During Trial**

**INSTRUCTION NO.  2.1**

**Consideration of Testimony from Previous Trial or Depositions.**

In addition to live testimony in this case, you may have read to you testimony from transcripts of the previous trial between the parties or testimony given in depositions.  A deposition is testimony taken under oath before the trial and preserved, either in writing or on videotape.  You are to give the same consideration to the previous trial and deposition testimony that is read to you in this case as you give to live testimony presented here in the courtroom. That is, you are to judge the credibility of the witness and determine the weight to be given to the testimony to the best of your ability under the circumstances, as if the witness had been before you on the witness stand when he made the statement under oath.

## INSTRUCTION NO.  2.2

### Opinion Evidence and Expert Witnesses

You will hear opinion evidence from people described as experts.  People who by knowledge, skill, experience, training or education, have become expert in some field may state their opinions on matters in that field and may also state the reasons for their opinions.

Expert opinion testimony should be judged just like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinions, and all of the other factors that you consider when determining the credibility of the other witnesses.

Experts generally rely upon some assumptions in developing their opinions.  These assumptions are likewise subject to your evaluation and should be considered along with the rest of the evidence.

In resolving the conflict in the testimony of expert witnesses, you should weigh the opinion of one expert against that of another.  In doing this, you should consider the qualifications and believability of each witness, the reasons for each opinion and the matter upon which it is based.

**INSTRUCTION NO.  2.3**

**<u>Charts, Summaries and Graphic Materials</u>**

A number of charts, summaries and other graphic materials will be shown to you in order to help explain the facts and documents in evidence in the case.   However, such charts, summaries and materials are not in and of themselves evidence or proof of any facts.   If such materials do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

**Section 3.0**

**Substantive Instructions**

## INSTRUCTION NO. 3.1[1]

### Nature of the Claim – Reimbursement Under GP-55 Termination for Convenience Clause

The general rule in government construction law is when the government terminates a contract for its convenience, the contractor should be compensated fairly for the work done and the preparations made for the terminated portions of the contract, including a reasonable amount for profit.  Typically, the contractor is entitled to recover all of its incurred costs and settlement costs, and reasonable profits if warranted.

In this case, MK stood in the shoes of the government in its contract with GIT, and GIT was its contractor.  Accordingly, and to the extent it meets its burden of proof regarding each category, GIT is entitled to recover its "incurred costs," its "settlement costs," and its "reasonable profits," if warranted, on the MK-GIT Contract.  You will be instructed in more detail on these damage categories in the instructions that follow.

---

[1]       **Authority:** March 31, 2006, Order Continuing Trial at p. 7.
**MK's Objection:** The sentence "Typically, the contractor is entitled to recover all of its incurred costs and settlement costs, and reasonable profits if warranted" is an oversimplification, and contrary to the Subcontract, the FARs, and Tenth Circuit's opinion.  What is "typical" is irrelevant.  MK also objects to the phrase "MK stood in the shoes of the government."

*Judge's Ruling:*  MK's objection is OVERRULED.  The sentence comes verbatim from the Court of Claims opinion in *McDonnell Douglas Corp. v. U.S.*, 40 Fed. Cl. 529, 534 (Ct. Cl. 1998)(citing FAR 52.249-2(f)).

INSTRUCTION NO. 3.2[2]

**Measure of Recovery – Termination for Convenience – All Categories (GP-55)**

The termination-for-convenience provisions of GP-55 define the amounts GIT may recover in this action.  Specifically, GIT is entitled to recover the following costs:

1.      For its work performed under the MK-GIT Contract before the effective date of termination, the total (without duplication of any items) of:

a.      GIT's "actual" and "recoverable"  costs of this work, as defined in subsequent instructions;

b.      The cost of GIT's settlements with construction subcontractors for actual

---

[2]      Authority: March 31, 2006, Order Continuing Trial at p. 8 – 9.
**MK's Objection:**  MK objects to the extent this instruction is inconsistent with GP-55 of the Subcontract.

**GIT's Reply:**  This instruction is as the Court provided, but identifies the undisputed amount MK has paid to GIT in paragraph 3.

*Judge's Ruling: MK's Objection is OVERRULED.*  Category 1(b) was modified to reflect more accurately what is intended under GP-55 in terms of subcontractor work in this category.  I remain uncertain, however, of the difference between the costs contemplated in Category 1(b) and those contemplated in Category 2 and as the parties to address this at the upcoming final trial preparation conference.  If the parties can stipulate to different language that clears up any confusion, I will entertain it at the conference.

In addition, Category 1(a) modified to define costs in terms of being actual & "recoverable." The definition of "recoverable" from the parties' Stipulated Instr. 3.14 (now Instr. 3.5) will then be used to explain to the jury that costs must be "reasonable, allowable and allocable to the Contract to be "recoverable."  The parties' Stipulated proposed Instructions 3.10-13 will then flow better with the elements instruction 3.2.

Category 1(c) has been modified to conform better to the parties' proposed instructions re profit.

work in place at the job site as of the termination date; and

c.      If warranted, a reasonable sum as profit on work performed.  However, if it appears that GIT would have sustained a loss on the entire Contract had it been completed, then GIT shall not be entitled to any profit under this subparagraph (1)(c).

2.      The reasonable cost of settlement of the work terminated, including:

a.      Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals with MK and supporting data;

b.      Costs associated with the termination of and settlement with lower-tier subcontractors; and

c.      The cost for storage, transportation, and other expense items incurred that were reasonably necessary for the preservation, protection or disposition of the termination inventory and equipment.

3.      From the total amount you award for paragraphs 1 and 2 above, you shall subtract the sum of $2,682,804 which is stipulated as the total of payments previously made to GIT by MK.

In addition, GIT is also entitled to seek, and if proven to recover from MK, so-called "equitable adjustments" to the Contract to reflect cost increases caused by MK before the effective date of termination.  Specifically, equitable adjustments are increases in the contract price incurred by GIT because MK increased the amount or difficulty of the work, accelerated or sped up GIT's performance of the work, added to or complicated the work to be performed, or required GIT to leave materials and equipment on site for MK to use after the contract was

terminated.  GIT is also entitled to overhead and reasonable profit, if warranted, on its equitable adjustments.

If you find no damages in favor of GIT against MK, you must still assess nominal damages in the amount of one dollar.[3]

The various legal terms included in this instruction will be defined for you in the instructions that follow.

---

[3]     *Judge's comments:*  Is the provision for "nominal damages" applicable or necessary in term-for-convenience context?

**INSTRUCTION NO. 3.3**

**Burden of Proof - Generally**


This is a civil case and therefore, GIT bears the overall burden of proving its costs and the elements of its claims for equitable adjustment by what is called a "preponderance of the evidence." That means that no matter who presents the evidence, when you consider GIT's claims in light of all the facts, you believe its claim is more likely true than not true.

However, there may be certain limitations or defenses on GIT's recovery asserted by MK on which MK bears the burden of proof. In that case, I will instruct you accordingly and you should treat MK's limitations or defenses the same way you treat GIT's claims. That is, MK will have the burden of proving that what it says is more likely true than not true.


**Authority:** From my standard instruction on the burden of proof.

**CATEGORY 1  DAMAGES**

**WORK PERFORMED BEFORE EFFECTIVE DATE OF TERMINATION**

**INSTRUCTION NO. 3.4[4]**

**Category 1(a) - "Actual" cost of work performed  - Defined**

For purposes of Category 1(a) of Instruction 3.2, the "cost" of work performed is the sum of the direct and indirect costs incurred by GIT in performing work under the contract up to the effective date of the termination.   In determining such costs, any generally accepted method of determining or estimating costs that is equitable and is consistently applied may be used.

"Actual" costs means amounts determined on the basis of costs incurred, as distinguished from forecasted costs.  Actual costs include standard costs properly adjusted for applicable variances, if any.

**Authority:** 48 CFR §§ 31.001, 31.201–1(a).

---

[4]       The definition of "actual" cost is from the parties' stipulation Instruction 3.5.

**MK's Objection to "cost" definition from 48 C.F.R. §  31.201:**  This instruction is unnecessary, since GIT is not entitled to recover on a total-cost basis.  Also, this instruction is fatally incomplete without including the following language from § 31.201-1(b):  "(b) While the total cost of a contract includes all costs properly allocable to the contract, the allowable costs to the Government [here MK] are limited to those allowable costs which are allowable pursuant to Part 31 and applicable agency supplements."  GIT's truncated use of § 31.201-1 will give the impression that the total costs are recoverable.  MK will stipulate to this instruction if the following, based on subparagraph (b), is included:  "While the total cost of a contract includes all costs properly allocable to the contract, the allowable costs to MK are limited to those allocable costs which are allowable pursuant to Part 31 and the Subcontract."
     **GIT's Reply:**  MK's demand to include the revised language of subparagraph (b) does not help the jury.  It is a confusing, circular statement that allocable costs are allowable limited to allocable costs which are allowable.  MK simply seeks to confuse the jury.
     *Judge's Ruling:*  MK's Objection is SUSTAINED in part.  The Instruction will be given as modified and is combined with the parties' Stipulated 3.5.

**INSTRUCTION NO. 3.5 (was GIT's proposed 3.7)[5]**


**Category 1(a) - "Cost of This Work" includes Overhead**


Overhead represents GIT's indirect costs allocable to the Slick Rock project and may be recovered, if proven, as an actual "cost of this work" under Category 1(a).  The allowance for overhead compensates the contractor for costs not included in direct material or labor costs.

---

[5]      **Authority:** J. Cibinic & R. Nash, *Administration of Government Contracts*, 3rd ed. (1995), p. 749.

**MK's Objection:** GIT cites to no Subcontract or FAR provision in support of this proposed instruction.  Instead, it cites only to a page from Cibinic & Nash that is not part of that text's chapter on terminations for convenience.

**GIT's Reply:**  This instruction is a correct statement of the law.

**Judge's Ruling:**  MK's Objection is OVERRULED.

**INSTRUCTION NO. 3.6 (modified from Stipulated 3.14)**

**Category 1(a) - "Recoverable" Costs – Defined**

GIT must prove the specific amount of its costs incurred under the Contract with sufficient certainty so that the determination of the amount of the costs will be more than speculation.  For purposes of Category 1(a) of Instruction 3.2, then, "recoverable" costs are those actual costs that are "reasonable, allowable and allocable to the Contract."

In order to recover each item of cost claimed, GIT must prove that each item is reasonable, allowable, and allocable to the Subcontract.

**Authority:**  *Morrison Knudsen Corp. v. Fireman's Fund Ins.*, 175 F.3d 1221, 1242 & 1244 n.30 and accompanying text (10th Cir. 1999); Subcontract at ¶ GP-55 subpart H (cost principles and procedures of FAR, Part 31 shall govern); 48 C.F.R. § 31.204(a) (costs must be reasonable, allocable, and allowable).

**TENDERED BY GIT**
**INSTRUCTION NO. 3.4 [will not be given]**[6]


**Incurred Cost – Defined**

_____

[6]      An incurred cost is defined as an amount paid out in the past or an obligation to be paid out in the future.

**Authority:** *Appeal of Environmental Safety Consultants, Inc.*, 04-1 BCAP 32626, ASBCA

No. 53485 (May 7, 2004).

**MK's Objection:**  This instruction is improper because there are no obligations that GIT has identified that are "to be paid out in the future."  Also, GIT has gone through a bankruptcy proceeding, and has been fully discharged.  Thus, there are no future payment obligations.  This instruction will therefore only cause confusion and has no application here.

**GIT's Reply:**  The instruction is a proper statement of the law.  GIT's bankruptcy has not insulated MK from any of its obligations in this matter.  MK's argument improperly seeks to limit MK's liability to fully paid costs.  This is contrary to the 10th Circuit's opinion.  *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F 3d 1221, 1250 (10th Cir. 1999).  "It is not necessary to have paid a cost in order to have incurred and recorded it."

*Judge's Ruling:*  The instruction is unnecessary and will not be given.

**TENDERED BY MK**

**INSTRUCTION NO. 3.6** [will not be given]

### Cost Must be Actual and Incurred

Any costs GIT seeks to recover must be actual and incurred.

*Judge's Ruling:*  This instruction is redundant and will not be given.  GIT's Objection is SUSTAINED.

TENDERED BY GIT

INSTRUCTION NO. 3.8 [WILL NOT BE GIVEN][7]

GIT Subcontract Converted to Cost Reimbursement Contract

Upon conversion to a termination for convenience of the Government, GIT's fixed price contract was converted to a cost reimbursement contract and GIT thus became entitled to recover its reasonable, allowable and allocable costs incurred in performance of the terminated contract.

**Judge's Ruling:** The instruction and MK's 3.9 are both unnecessary and will not be given.

---

[7]     **Authority**: *White Buffalo Construction, Inc. v. United States*, 52 Fed. Cl. 1, 4 (Fed. Cl 2002); *Best Foam Fabricators, Inc. v. United States*, 38 Fed. Cl. 627, 638 (Fed. Cl. 1997); Seven Sciences Industries, ASBCA No. 2337, 80-2 B.C.A., p. 14,518 at 71, 555; *Anlagen und Sanierungstechnik GmbH*, ASBCA No. 37878, 91-3 B.C.A., p 24, 128 at 120, 753.

**MK's Objection:** Although "many of the BCA cases refer to the termination of a fixed price contract as tantamount to converting it to a cost reimbursable contract[, t]his is an oversimplification. . . . These [termination-for-convenience] principles are not consistent with treating the fixed price contract as actually converted to a cost reimbursable contract. . . . A terminated fixed-price contract is not converted to a true cost reimbursable contract . . . ." *Appeals of Tom Shaw, Inc.*, 1993 WL 18835 (Eng. B.C.A.), 93-2 BCA P 25742, ENGBCA No. 5540, ENGBCA No. 5541, ENGBCA No. 5620 - 5628, ENGBCA No. 5675 (January 22, 1993).

MK proposes that the jury be instructed as follows: "GIT bears the burden of proving its costs in accordance with the Subcontract with sufficient certainty so that the determination of the amount of the costs will be more than speculation. In order to recover each item of cost claimed, GIT must prove that each item is reasonable, allowable, and allocable to the Subcontract."

**GIT's Reply:** This instruction is a correct statement of the law.

**INSTRUCTION NO. 3.7 (was GIT's proposed 3.10)[8]**

**Category 1(a) - "Reasonable" Costs - Defined**

A cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business.   No presumption of reasonableness shall be attached to the incurrence of costs by GIT.   The burden of proof shall be upon GIT to establish that such cost is reasonable.

What is reasonable depends upon a variety of considerations and circumstances, including:

1.        Whether it is the type of cost generally recognized as ordinary and necessary for the conduct of GIT's business or the contract performance;

2.        Generally accepted sound business practices, arm's length bargaining, and Federal

---

[8]        **MK's Objections:**  GIT's proposed instruction fails to incorporate the following language from the applicable FAR section:  "Reasonableness of specific costs must be examined with particular care in connection with firms or their separate divisions that may not be subject to effective competitive restraints. "   Additionally, GIT's proposed instruction is incorrect in that it attempts to limit GIT's burden of proving reasonableness to only certain circumstances, contrary to the Tenth Circuit's opinion stating that GIT must prove reasonableness of its specific costs. *Morrison Knudsen Corp. v. Fireman's Fund Ins.*, 175 F.3d 1221, 1242 & 1244 n.30 and accompanying text (10th Cir. 1999).

MK proposed that this instruction be given, but with the following introductory paragraph instead:  "A cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business. Reasonableness of specific costs must be examined with particular care in connection with firms or their separate divisions that may not be subject to effective competitive restraints.  No presumption of reasonableness shall be attached to the incurrence of costs by a contractor.  The burden of proof shall be upon GIT to establish that such cost is reasonable." MK's proposed instruction follows.

**GIT's Reply**:  MK's request that the jury be instructed regarding other firms or separate divisions is not applicable to this case.  The instruction is correct as tendered.  MK seeks to complicate and confuse the jury.

*Judge's Ruling.*  GIT's version of this instruction will be given as modified to reflect 48 C.F.R. § 31.201-3 and to clarify that GIT bears the burden of proving reasonableness generally, even though MK's objection that GIT's language suggests otherwise was hypertechnical.  If MK does not object to a specific cost item, GIT will have met its burden of proof.

and State laws and regulations;

3.      GIT's responsibilities to MK, the Government, other customers, the owners of the

business, employees, and the public at large; and

4.      Any significant deviations from GIT's established practices.

**INSTRUCTION NO. 3.8 (was Stipulated 3.12)**

**"Allocable" Cost - Defined**

A cost is allocable if it is assignable or chargeable to one or more Slick Rock Project objectives on the basis of relative benefits received for the Project or other equitable relationship. Subject to the foregoing, a cost is allocable to the MK-GIT contract if it:

1.      Is incurred specifically for the contract;

2.      Benefits both the contract and other work, and can be distributed to them in reasonable proportion to the benefits received; or

3.      Is necessary to the overall operation of GIT, although a direct relationship to any particular Project objective cannot be shown.

**INSTRUCTION NO. 3.9 (was Stipulated 3.13)**

**<u>Category 1(a) - "Allowable" Costs - Defined</u>**

The factors to be considered in determining whether a cost is allowable include the following:

1.      Reasonableness;

2.      Allocability;

3.      Generally accepted accounting principles and practices appropriate to the particular circumstances; and

4.      Terms of the Subcontract.

GIT is responsible for accounting for costs appropriately and for maintaining records, including supporting documentation, adequate to demonstrate that costs claimed have been incurred, are allocable to the contract, and comply with applicable cost principles.

**TENDERED BY MK**
**INSTRUCTION NO. 3.15 [WILL NOT BE GIVEN][9]**
**Recovery Limited by Subcontract Price Less Payment Less Terminated Work**

The amount that you award to GIT cannot exceed the total Subcontract price as reduced by:

1.      The amount of payments previously made to GIT; and

2.      The Subcontract price of work not terminated.


**Authority:**   Subcontract at ¶ GP-55 subpart E (limitation on recovery); 48 C.F.R.   § 49.207 (limitation on recovery).

**GIT's Objection:**   This instruction is incorrect as a matter of law.   GIT is entitled to recover equitable adjustments and increased costs without limitation for the "price of work not terminated."   GP-55 E requires agreement which MK refuses to address.

---

[9]        ***Judge's Ruling:***   GP 55-E, like 48 C.F.R.  § 49.2 on which it is based, discuss principles guiding *settlements* of govt./contractor reimbursement for fixed price contracts that are terminated for convenience.   "The primary objective is to negotiate a settlement by agreement," and "parties may agree upon a total amount to be paid the contractor without agreeing on or segregating the particular elements of costs or profit comprising this amount."  § 49.201 (b).  The principles listed in § 49.2, then, are not particularly helpful when cost recovery is not by agreement but by adversarial proceedings such as this one.   GIT's objection is SUSTAINED.  MK's concerns can be addressed post-verdict, if necessary.

**INSTRUCTION NO. 3.10 (was GIT's proposed 3.15)[10]**

**Termination for Convenience – No Fault Recovery of Costs of Work**

Because GIT's contract was terminated for convenience, GIT is entitled to recover its costs incurred on a no fault basis, even if the contract work does not comply in all respects with the specification requirements or was incomplete or was inefficiently or defectively performed.

---

[10]      **Authority**: *Best Foam Fabricators, Inc. v. U.S.*, 38 Fed. Cl. 627, 640 (Fed. Cl. 1967); appeal of *Western States Painting Co.*, 69-1 BCA P 7616, ASBCA 13843 (April 11, 1969); *Appeal of New York Shipbuilding, Co.*, 73-1 BCAP 9852, ASBCA 15443 (Dec. 21, 1972);  This Court's Order on Pending Motions, March 20, 2006, p. 5 – 6.

        **MK's Objection:**  This proposed objection is inconstant with the Tenth Circuit Opinion, which recognizes that GIT must actually prove causation.

        **GIT's Reply:**  This instruction is an accurate statement of the law.  Applying the law applicable to a constructive termination for convenience does not require causation for GIT's no fault cost recovery of costs for work.  MK confuses cost of work and equitable adjustments.
        *Judge's Ruling:*  MK's Objection is OVERRULED.

**GIT's proposed 3.17 [will not be given]**

**<u>Burden of Proof - All Cost Recovery Categories</u>**

GIT bears the burden of proving its costs in accordance with GP 55 and the MK-GIT Contract generally with sufficient certainty so that the determination of the amount of the costs will be more than speculation.  GIT need not prove its cost claims with absolute certainty or mathematical exactitude.  It is sufficient if GIT furnishes a reasonable basis for computation, even though the result is only approximate.

*Judge's Ruling:*  The instruction is duplicative and unnecessary.

**TENDERED BY GIT**

**INSTRUCTION NO. 3.18  [REJECTED]**[11]


**Ascertainment of Damages - Generally**


The ascertainment of damages, or of an equitable adjustment, is not an exact science, and where responsibility for damage is clear, it is not essential that the amount thereof be ascertainable with absolute exactness or mathematical precision.


**Authority:**  *CEMS, Inc. v. U.S.*, 59 Fed. Cl. 168, (Fed. Cl. 2003) 227, citing *Elec. & Missile Facilities, Inc. v. U.S.*, 189 Ct. Cl. 237, 257, 416 F 2d 1345, 1358 (1969).


**MK's Objection:**  This proposed instruction is contrary to the Tenth Circuit's opinion in this case addressing what GIT's burden of proof is.  MK's proposed jury instructions correctly instruct the jury regarding GIT's entitlement and burden of proof, based on the Tenth Circuit opinion, the applicable Subcontract provisions, and the applicable FARs.


**GIT's Reply:**  This instruction is correct.

---

[11]  *Judge's Ruling:*  This instruction REJECTED as unnecessary.

**INSTRUCTION NO. 3.11 (from GIT's TENDERED 3.20)[12]**

**Bonding Costs are Allowable**

Bonding costs arise when the Government requires assurance against financial loss to itself or others by reason of an act or default of its contractors.  Included are such bonds as performance bonds and payment bonds.  GIT's costs incurred in paying the bond premiums for work to be performed under the Contract are allowable as costs recoverable in termination-for-convenience situations.

---

[12]     ***Judge's Ruling***:  MK's Objection is SUSTAINED as reflected in the modifications made and is otherwise OVERRULED.

[MK's tendered Instr. 3.21 omitted - no instructions on consequential damages necessary]

**TENDERED BY GIT**
**INSTRUCTION NO. 3.22**
[THIS INSTRUCTION WILL ONLY BE GIVEN IF THERE IS EVIDENCE TO SUPPORT IT
AND IF THE COSTS ARE DISTINCT FROM THOSE SOUGHT IN CATEGORY 2(b)][13]

## Category 1(b) - Cost of Settling and Paying Subcontractor Termination Settlement Proposals

In the termination-for-convenience, GIT claims costs for Subcontractor settlement amounts.  It is a long established rule that a contractor need not pay its subcontractor before making a claim for costs on its behalf.  Such pass-through costs under standard termination-for-convenience clauses require settlement, but not payment.  A contractor who seeks to recover on its subcontractors' claims must have settled, but need not have paid those costs.

**Authority:**  *Morrison Knudsen Corp. v. Fireman's Fund*, 175 F.3d 1221, 1250 (10th Cir. 1999).

**MK's Objection:**   MK objects to this proposed instruction because there are no subcontractor settlements that remain unpaid.  Thus, this instruction is unnecessary, and can only be misused or misunderstood if given to the jury.

**GIT's Reply:**  MK's objection is incorrect and irrelevant.  This instruction is accurate.

---

[13]    *Judge's Query:*  Even assuming there is evidence to support this instruction, how are such settlement costs distinct from the settlement costs recoverable under Category 2?

**TENDERED BY GIT [14]**
**INSTRUCTION NO. 3.23 [rejected as unnecessary given revisions to 3.2]**

**Reasonable Profits Allowed**

Profit is allowed on preparations made and work done by GIT for the terminated portion of the contract.  When computing profit on the terminated portions of a construction contract profit is also allowed on GIT's settlements with construction subcontractors for actual work in place at the job site.

**Authority:** 48 CFR § 49.202(a) and (c).

**MK's Objections:**   This proposed jury instruction does not properly reflect the applicable FAR section and GP-55 of the Subcontract.  MK's proposed instructions on profit properly and fully instruct the jury.  Instruction 3.1 already instructs the jury on what profit is allowable.

**GIT's Reply:**  This instruction is correct as proposed.

---

[14]  ***Judge's Ruling***:  Instruction will not be given.

**[modified from GIT's 3.24 and MK's 3.25]**
**INSTRUCTION NO. 3.12**

**<u>Category 1(c) - Reasonable Profit - Defined</u>**

Any reasonable method can be used to determine the profit to be awarded GIT in category 1(c), if any.  In determining a fair profit you may consider:

1.      The extent and difficulty of the work done by GIT as compared with the total work required by the Contract;

2.      The rate of profit GIT would have earned had the Contract been completed;

3.      The rate of profit that both parties contemplated at the time the contract was negotiated;

4.      The efficiency of GIT, with particular regard to –

      a.      attainment of quantity and quality production;

      b.      reduction of costs;

      c.      economic use of materials, facilities and manpower; and

      d.      disposition of termination inventory;

5.      Amount and source of capital and extent of risk assumed;

6.      The character of GIT's business, including the source and nature of materials and the complexity of techniques used; and

7.      The character and difficulty of subcontracting, including selection, placement, and management of subcontracts, and effort in negotiating settlements of terminated subcontracts.

**INSTRUCTION NO. 3.13 (from MK's TENDERED 3.26)**

**Anticipatory Profits**

GIT is not entitled to recover any anticipated profits for work not yet performed.


**Authority:** 48 C.F.R. § 49.202(a).


**GIT's Objection:**  This instruction is unnecessary, immaterial and irrelevant.  GIT' is not seeking anticipatory profits.

**TENDERED BY GIT[15]**
**INSTRUCTION NO. 3.27 [Rejected as unnecessary]**

**Profit on Subcontractor Settlements as Costs of this Work**

When computing profit on the terminated portion of GIT's construction contract, you shall allow profit on GIT's settlements with construction subcontractors for actual work in place at the job site.

Authority:  48 CFR 49.202(c)(2).

**MK's Objection:**  MK objects to this instruction to the extent it does not include this language: "You shall not include profit on GIT's settlements with construction subcontractors for materials on hand and for preparations made to complete the work."  This language comes right from 49.202(c)(3).

**GIT's Reply:**  The instruction tendered is an appropriate statement of law.  There is no need to include the language proposed by MK since the instruction on its face is limited to "actual work in place at the jobsite."

---

[15]    *Judge's Ruling*:  The instruction is duplicative and unnecessary given revisions to Instruction 3.2

**\*\*JLK REVISED (premised loosely on GIT 3.28 & MK 3.30)[16]**

**[RESERVED]**

## INSTRUCTION NO. 3.14

### Category 1(c) - Caveat Regarding Entitlement to Profit if GIT Would Have Sustained a Loss on Contract in the Absence of a Termination

When MK terminated GIT's contract for convenience, typically GIT would be compensated for work done, including a reasonable amount for profit. However, if it appears that GIT would have suffered a loss on the entire contract even without MK's termination, then GIT should not obtain a profit and its cost recovery will be reduced corresponding to the rate of loss. Any reduction in GIT's cost recovery under this rule is determined by application of a "loss ratio adjustment."

You will hear expert testimony on the issues raised by this caveat to GIT's Category 1(c) entitlement to a reasonable profit on work completed, specifically including testimony regarding whether and how to apply a "loss ratio adjustment" to reduce GIT's cost recovery, if appropriate.

---

[16]    **GIT's Authority:** *McDonnell Douglas Corp and General Dynamics Corp.*, 37 Fed Cl 270, 272-73 (Fed. Cl. 1996).

   **MK's Objection:** Instruction 3.1 already instructs the jury on the first paragraph of this proposed instruction. Thus, this instruction is unnecessary. The second paragraph of this instruction is simply for the purpose of improperly dissuading the jury from properly applying the loss-ratio adjustment if required to.

   **GIT's Reply:**    The instruction properly explains what the jury is being asked to evaluate. GIT does not believe a loss adjustment is applicable to this matter and the issue should be eliminated. See MK's statement of authority to Instruction 3.30. However, MK refuses to withdraw the issue. Therefore, these instructions are tendered.

   ***Judge's Ruling****:  **The parties' submissions on the issue of "loss ratio adjustment" were almost entirely unuseable.  I have created my own instructions based loosely on the parties' submissions and will use them, if necessary, only if the issue survives reconsideration at the May 1 trial preparation conference.***

[reserved]

## INSTRUCTION NO. 3.*

### Loss Ratio Adjustment - Burden of Proof[17]

MK has the burden of proving that it is entitled to a loss adjustment reducing GIT's recovery.

---

[17]     **Authority:** *McDonnell Douglas Corp and General Dynamics Corp.*, 37 Fed Cl 270, 273-74 (Fed CL, 1996); John Cibinic, Jr. & Ralph C. Nash, Jr., *Administrative of Government Contracts*, p. 1129 (3d ed. 1995) "Government has burden of proving that the contractor would have been in a loss position at completion since it is seeking to reduce contractor's recovery."

**MK's Objection:** GIT has the burden of proving the cost to complete and all of the factors in the Subcontract at ¶ GP-55 subpart F(1)(c) and 48 C.F.R. § 49.202(a) if it wishes to receive profit, and must prove what its rate of profit was at the time of termination. This proposed instruction attempts to shift that burden.

**GIT's Reply:** MK's objection is incorrect. The Government must prove entitlement to a loss adjustment.

***Judge's Ruling***: MK's Objection is OVERRULED. MK's citation to 48 C.F.R. § 202(a) is inapt and significantly misleading. While a contractor has the burden of proving both the estimated cost to complete a contract and the rate of profit, it is appropriate and precedented for the government (here, MK) to prove that the contractor would have been in a loss position at completion "since it is seeking to reduce the contractor's recovery." Cibinic & Nash, *Administration of Government Contracts* at 1129 (citing *Systems & Computer Info., Inc.*, ASBCA 18458, 78-1 BCA ¶ 12,946). Section 202(a) sets forth no "factors" that a contractor or anyone else must prove, and the "factors" that are identified in § 202(b) are factors the government and its contractor should consider "in *negotiating* or determining profit." 48 C.F.R. § 49.202.

## INSTRUCTION NO. 3.30 [WILL NOT BE GIVEN][18]

### <u>Category 1(c) - Loss of Calculation of the Rate-of-Loss Reduction</u>

You shall use the following to determine whether GIT was in a loss position when it was terminated, and, if so, the percentage of incurred costs GIT is entitled to recover:

CP/(IC+CC)

Where CP = Contract Price

IC = Incurred Costs, inception of contract to termination

CC = Cost of completion of remaining work

If the result is 1.00 or greater, then GIT was in a profitable position and is entitled to profit. If the result is less than 1.00, then GIT was in a loss position and is not entitled to profit and is entitled only to the percentage of the incurred costs as determined by the formula.

---

[18]     **Authority:** <u>Subcontract</u> at ¶ GP-55 subpart F(1)(c); 48 C.F.R. § 49.203(a); *Paul E. McCollum, Sr.*, ASBCA 23269, 81-2 BCA ¶ 15,311 (loss-profit formula). A determination of whether GIT was in a loss position cannot be made until the jury determines which of GIT's claims for equitable adjustments are allowable. GIT was admittedly over budget on the Project. But it claims that the contract price should be increased in accordance with its equitable adjustment claims. Until the jury determines which equitable adjustment claims, if any, are allowable, there is no way to determine if GIT was in a loss position.

**GIT's Objection:** This instruction violates the Court's Order Continuing Trial, at page 5, "…[n]ot require the jury to engage in significant mathematical analysis." There is no basis to impose a loss adjustment in this case as MK states above. Regardless, MK intends to complicate every aspect of this case no matter how meritless.

*Judge's Ruling:* Any application of a cost adjustment ratio will be done by the court in post-verdict proceedings. This instruction will not be given in any event.

INSTRUCTION NO. 3.* [19]

**Loss Ratio Adjustment - When Not Applicable**

Even if GIT may appear to be in a loss position at the time of termination does not necessarily mean that a loss adjustment applies.  A loss adjustment will not be made if MK is responsible for the cost increase, or if GIT is excused from performing because of impossibility.  Accordingly, the adjustment will not be made where,

1.     GIT is entitled to an equitable adjustment that takes the contract out of the loss position (*see* Instructions in Category 3 damages - Equitable Adjustments); or

2.     MK failed to make progress payments and those payments would have taken the contract out of the loss position; or

3.     If GIT's performance was made impossible as a result of the actions or conduct of MK **[this is what is arguably law of the case]**; or

4.     If defective specifications were furnished to GIT such that MK is responsible for putting the contract in the loss position.

----

[19]     **Authority:** *McDonnell Douglas Corp and General Dynamics Corp.*, 37 Fed., Cl 270, 273-74 (Fed. Cl. 1996); *Appeal of Wolfe Construction Company*, 88-3 BCA p. 21122, ENG BCA 5309.

**MK's Objection:**  This proposed instruction is improper.  None of the "conditions' that GIT states would prohibit the applicability of the loss adjustment.  Instead, to the extent GIT can prove entitlement to equitable adjustments and the amounts of those adjustments, it may be able to prove that it in fact was not in a loss position when terminated.  But taking GIT's proposed instruction as written, even if GIT can prove that it was entitled to only $1.00 in equitable adjustments, the loss adjustment would not apply according to GIT's proposed instruction.  Such a result would not make sense.

**GIT's Reply:**  The proposed instruction is correct as a matter of law.

*Judge's Ruling*:  MK's objection is OVERRULED; instruction modified to clarify and to remove duplicative equitable adjustment categories.  This instruction will be given if loss adjustment issue given to jury.

**CATEGORY 2 – DAMAGES**
**Reasonable Costs of Settlement of Work Terminated**

## INSTRUCTION NO. 3.*[20]

### Catagory 2(a) - Recoverable Fees and Costs and Limitations on Recoverability

As previously instructed, GIT may recover accounting, legal, clerical, and other expenses reasonably necessary for the preparation and pursuit of termination settlement proposals and supporting data.  To recover allowable legal expenses, GIT must introduce evidence of the hours worked for recoverable legal work, the hourly rate, and the reasonableness of the fees.

With respect to GIT's request for legal expenses incurred in negotiating with MK, legal expenses incurred for anything other than preparation and pursuit of a termination settlement proposal are not recoverable.   However, if GIT incurred costs for materially furthering the negotiation process towards a settlement, such costs are allowable even when negotiation fails and litigation follows.

GIT is not seeking to recover litigation expenses incurred in formal legal proceedings between the parties or on appeal, which expenses are not recoverable.

---

[20]     ***Judge's Ruling:***  This instruction, based on MK's proposed Instruction 3.33 and GIT's proposed Instruction 3.35, will be given as modified in lieu of GIT's proposed 3.32.

**TENDERED BY MK**
**INSTRUCTION NO. 3.34 [will not be given][21]**

**Contingent Fees**

Contingent attorneys' fees or consultant's fees are not recoverable by GIT under any circumstances.

**Authority:**   FAR Part 48, Section 31.205-33(b); *Spectrum Leasing Corp. v. General Service Administrator*, GSBCA No. 12,189, 95-1 BCA 27,317.

**GIT's Objection:**   This instruction is unnecessary, immaterial, and irrelevant.  There are no contingent fees involved in this matter.

---

[21]   ***Judge's Ruling:***  Based on GIT's representation that no contingent attorney or consultant fees are being sought, the Instruction is unnecessary and will not be given.

INSTRUCTION NO. 3.*[22]

**Category 2(b) - Costs for Litigation and Resolution of Subcontractors Claims**

The termination for convenience clause provides for GIT's recovery for attorney fees and the costs incurred in the performance of the contract work.  Defending against suits by subcontractors RN Robinson, Keers Environmental and Bogue Construction concerning work performed under the MK-GIT contract, even if the lawsuits were filed after GIT's termination, are costs of performance or continuing costs of performance and are recoverable by GIT.

---

[22]      **Authority:** *Appeal of Information Systems & Networks Corp.*, 00-1 BCA p. 30665, ASBCA 42659 (Nov. 18, 1999).

**MK's Objection:**  MK objects to this instruction because it is incomplete, is covered by prior instructions (including 3.1), and improperly instructs the jury as to certain subcontractor claims.  MK has submitted proposed instructions on subcontractor claims that incorporates the applicable FAR provision.

**GIT's Reply:**  This instruction is proper and correct.

*Judge's Ruling:*  MK's objection is OVERRULED.

STIPULATED

**INSTRUCTION NO. 3.***

**<u>Category 2(b) - Subcontractor Settlements</u>**

Where GIT has settled with its subcontractors, then MK must accept the settlement's amount within a broad range of reasonableness, so long as the settlement amount is considered to be a fair compromise price arrived at after arms' length bargaining, without collusion, and based on a sound exercise of prudent judgment.

Business judgment as distinguished from strict accounting principles is the heart of a settlement. The settling parties may agree on a total settlement amount without agreeing on or segregating the particular elements of costs or profit and, in appropriate cases, costs may be estimated, differences compromised, and doubtful questions settled by agreement. Settlements also require less record keeping.

A termination settlement need not strictly adhere to Federal Acquisition Regulation cost principles. GIT, in seeking to recover the costs of settling with a subcontractor, thus need not strictly prove the allowability, reasonableness, and allocability of all of the subcontractor's costs.

**TENDERED BY GIT
INSTRUCTION NO. 3.38[23]**

**Fireman's Fund Surety Settlement Recovery**

GIT as bond principal is obligated to reimburse Fireman's Fund for costs incurred in discharging the surety's obligations under the payment or performance bonds. These costs are recoverable by GIT as a cost of the work. GIT need not have actually paid the surety in order to have incurred recoverable costs under the indemnity agreement.

**Authority:** *Appeal of Wolf Construction Company*, 88-3 BCA p.21122, ENG BCA 5309 (Sept. 9, 1988).

**MK's Objection:** This instruction misstates the law, and is contrary to the Court's recent ruling on Fireman's Fund's attorneys' fees. GIT, by including this proposed instruction, is attempting to do indirectly what it admittedly cannot to directly: Recover attorney's fees for litigating with MK. Additionally, GIT's "surety obligations" were completely discharged as a result of its bankruptcy proceeding, whereby Fireman's Fund became part owner of GIT's claim against MK. Thus, there are no unpaid amounts that GIT is going to have to pay Fireman's Fund for. Additionally, GIT's expert on damages, Mr. Fuchs, does not even include such alleged costs in his calculations.

**GIT's Reply:** MK's objection is incorrect. GIT is not seeking MK litigation expenses. GIT's bankruptcy is irrelevant and did not operate to insulate MK from its obligations. GIT's claims against MK are proper.

_____

[23] ***Judge's Ruling***: I reserve judgment on this instruction until the May 1 2006 conference.

**TENDERED BY GIT**
**INSTRUCTION NO. 3.39 [will not be given][24]**

**Subcontractor Settlement by Judgment**

GIT is seeking recovery for the cost of settlement with its subcontractor, RN Robinson & Son, Inc. where final judgments against GIT were obtained.

When a subcontractor, such as Robinson, obtains a final judgment, the amount shall be treated as a cost of settling with GIT to the extent the judgment is properly allocable to the terminated portion of the contract.

---

[24]        **Authority**:  49.108-5 Federal Acquisition Regulations.

**MK's Objection:**  MK objects to this instruction on multiple grounds:  First, it does not recite the applicable law at all.  Second, it takes an issue away from the jury.  It is the jury that should determine what portion, if any, of a subcontractor judgment is recoverable.  Third, RN Robinson walked off the project prior to MK's termination of GIT, alleging breach of contract by GIT and MK.  *R.N. Robinson & Sons, Inc. v. Ground Improvement Techniques*, 31 F. Supp. 2d 881, 883 (D. Colo. 1998).  Thus, RN Robinson was not terminated as a result of MK's termination of GIT, and Robinson's claims against GIT did not arise as a result of MK's termination of GIT.  Rather, Robinson's claims against GIT arose as a result of alleged prior breaches of contract by GIT, including GIT's failure to supply sufficient water for RN Robinson to perform its work.  MK is not responsible for this.  GIT cannot simply pass this judgment through to MK without proving causation.  Additionally, RN Robinson's judgment included categories of damages, such as anticipated profits, that are expressly prohibited in a termination-for-convenience recovery.
        MK is submitting its own set of instructions on subcontractor judgments that properly instruct the jury on the applicable law.
        **GIT's Reply:**  This instruction is proper and complies with this Court's prior rulings.  See March 30, 2006 Order on Motion for Reconsideration.
        *Judge's Ruling*:  This instruction is subsumed by GIT's Proposed Instr 3.40, which will be given as modified below.

**INSTRUCTION NO. 3.\* [based on GIT's TENDERED 3.40[25]**

**Category 2(b) - RN Robinson Amended Judgment Recovery**

In order to recover the amount RN Robinson's amended judgment as a cost of settling with MK, GIT must prove that:

      1.      The judgment is properly allocable to the terminated portion of the MK-GIT contract;

      2.      GIT made reasonable efforts to include a subcontract clause excluding payments of anticipated profits or consequential damages;

      3.      GIT made reasonable efforts to settle with Robinson;

      4.      GIT notified MK of the Robinson lawsuit and did not refuse to give MK control of the defense; and

      5.      GIT diligently defended the suit.

---

[25]    **Authority:** Section 49.108-5, Federal Acquisition Regulations.

    **MK's Objection:**  MK has submitted its own instruction on this topic which applies equally to subcontractor judgments, and contains a correct statement of the law.  Furthermore, GIT has written this instruction in such a way as to take an issue away from the jury and to seek to recover clearly unallowable costs against MK.  RN Robinson's amended judgment against GIT includes unallowable costs such as lost future profits and consequential damages.

    **GIT's Reply:**  The Robinson Amended Judgment fully complies with 49.108-5.  MK improperly seeks to avoid responsibility for causing the damage reflected in the Robinson judgment and settlement.

    *Judge's Ruling:*  The Instruction (based on GIT's proposed 3.40) will be given as modified.

TENDERED BY MK
INSTRUCTION NO. 3.41 [will not be given][26]

**Subcontractor Judgments**

If a sub-subcontractor to GIT obtained a final judgment against GIT as a result of MK's termination of GIT, then you shall treat the judgment as a cost of settling with that sub-subcontractor, to the extent the judgment is properly allocable to the terminated portion of the Subcontract between MK and GIT, only if:

1.     GIT made reasonable efforts to include in its sub-subcontracts a termination-for-convenience clause excluding payment of anticipatory profits or consequential damages.  GIT's failure of to include such a clause in its sub-subcontracts or to exercise the clause rights shall not increase the obligation of MK beyond what it would have been if the sub-subcontract had contained an appropriate clause.

2.     The provisions of the sub-subcontract relating to the rights of the parties upon its termination are fair and reasonable and do not unreasonably increase the common law rights of the sub-subcontractor.

3.     GIT made reasonable efforts to settle with the sub-subcontractor.

---

[26]     **Authority:** 48 CFR § 49.108-5 (1989); 48 CFR § 49.108-2(b)(1) (lack of a proper termination provision shall not prejudice MK); *Joint Venture G.C.D.*, ASBCA No. 47285, 97-1 BCA ¶ 28,976 (GIT has burden); *McDonnell Douglas Corp.*, NASABCA No. 467-13, 68-2 BCA 7316, 34,030 (non-allocable costs are not recoverable, even if there is a subcontractor judgment).

**GIT's Objection:**  MK's proposed instruction improperly imposes obligations on GIT that are contrary to 48 CFR 49.108-5.  MK includes the duty to "exercise clause rights" and "not increase the obligations."  MK also imposes other obligations on GIT including that the judgment was the result of MK's termination.  The proposed instruction is incorrect as a matter of law.

*Judge's Ruling:*  MK's concerns are covered by GIT's proposed Instr 3.40, as modified.

4.　　　GIT gave prompt notice to MK of the initiation of the proceeding in which the judgment was rendered and did not refuse to give MK control of the defense of the proceedings.

5.　　　And GIT diligently defended the suit.

GIT must prove items 1 through 5 above for any judgment against it to be considered a cost of settling with a sub-subcontractor, and must prove that the final judgment was a result of MK's termination of GIT.

If the claim for cost under the Subcontract is not allocable and reimbursable, a judgment obtained by a sub-subcontractor against GIT based on a claim for such non-allocable costs does not make the amount of the judgment reimbursable.

**TENDERED BY MK**

**INSTRUCTION NO. 3.42 [REJECTED as unnecessary]**


**Robinson Judgment**


MK is not responsible for payment of the Robinson judgment simply because Robinson obtained a judgment against GIT.


**Authority:**   *McDonnell Douglas Corp.* NASABCA No. 467-13, 68-2BCA 7316, 3400030.


**GIT's Objection:**   This instruction is unnecessary, immaterial, and improper.   The instruction improperly suggests that MK is not responsible.   The instruction is contrary to 48 C.F.R. 49.108-5.

**TENDERED BY MK**

**INSTRUCTION NO. 3.43 [REJECTED as unnecessary]**


**Robinson Verdict**


The decision in RN Robinson & Son, Inc., Ground Improvement Transportation, Inc. and Fireman's Fund Insurance Company is not binding on MK.



**Authority:**   *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 985-86 (10th Cir. 1994).


**GIT's Objection:**  This instruction is immaterial, unnecessary, and improper.  Subject to the application of 49.108-5, the RN Robinson Amended Judgment is binding on MK and the Government.

**CATEGORY 3 - DAMAGES**

**Equitable Adjustments**

**INSTRUCTION NO. 3.\* (parties' stipulated 3.44)**

<u>**Category 3 - Equitable Adjustments – Defined**</u>

An equitable adjustment is a change in contract price.  It compensates GIT for increased costs reasonably incurred because MK increased the amount or difficulty of the work required by the contract or somehow accelerated, augmented, or complicated the work and thereby caused GIT to incur specific additional costs.

**INSTRUCTION NO. 3.\* (based on GIT's proposed 3.45, 3.49as modified)[27]**

**Category 3 - Equitable Adjustments – Entitlement**

GIT has the burden to prove an entitlement to equitable adjustments to the subcontract price.  To be entitled to an equitable adjustment for a specific additional cost, GIT must prove each of the following by a preponderance of the evidence:

1.      MK required GIT to perform more or different work than required which increased the amount or difficulty of the work required by the contract or somehow accelerated, augmented, or complicated the contract work in a manner different than set forth in the contract;

2.      GIT performed all or a portion of the work it contends constitutes extra work;

3.      GIT incurred extra costs above what it would have incurred under the subcontract because of the extra work, and that these extra costs were reasonable, allowable and allocable to the contract; and

4.      MK caused GIT to incur these specific additional costs.

---

[27]      **Authority:**  *Morrison Knudsen Corp. v. Fireman's Fund*, 175 F.3d 1221, 1243-44 (10th Cir. 1999).

**MK'S Objection:**  MK has submitted its own instruction on this issue (3.47), which it believes properly instructs the jury in this area of law.

**GIT's Reply:**  The proposed instruction is an accurate statement of the law regarding entitlement to equitable adjustments.  MK's instruction 3.47 regarding level of proof does not address the issue of this instruction, nor is 3.47 an appropriate instruction on the level of proof for the reasons set forth in GIT's objection to MK's 3.47.  GIT's instruction 3.45 should be tendered to the jury.
    *Judge's Ruling:*   The instruction, as modified, is consistent with the Tenth Circuit's opinion remanding this case and my Order on Pending Motions.  MK's objection is OVERRULED.

**\*\*TENDERED BY GIT**
**INSTRUCTION NO. 3.46 [UNNECESSARY AND WILL NOT BE GIVEN]**

<u>**Equitable Adjustment – Burden of Proof**</u>

GIT need only prove the quantum of its damage claims by a preponderance of the evidence.

**Authority**: *Neal & Company, Inc.. v. United States*, 19 Cl. Ct. 463, 470 (1990).

**MK's Objection:** MK objects to the extent this instruction is inconsistent with the Tenth Circuit Opinion regarding GIT's burden of proof on remand. MK is submitting proposed instructions on equitable adjustments.

**GIT's Reply:** This instruction is a correct statement of the law.

**TENDERED BY MK**
**INSTRUCTION NO. 3.47 [REJECTED in favor of GIT's proposed instrns, as modified]**

<u>**Level of Proof for Equitable Adjustments**</u>

To prove that it is entitled to equitable adjustments in its original Subcontract amount, GIT must prove liability, causation, and injury.  In order to do so, GIT must prove that MK somehow delayed, accelerated, augmented, or complicated the work, and thereby caused GIT to incur specific additional costs.  GIT must also prove that those costs were reasonable, allowable, and allocable to the Subcontract.  GIT must present more than general, unsubstantiated pronouncements from its own witnesses that various acts of MK caused its cost overruns. Instead, GIT must present specific, persuasive evidence demonstrating how any action of MK caused its overruns.  GIT must also present evidence to show how MK's misdeeds or omissions caused each *specific* cost which GIT claims as an equitable adjustment.  GIT bears the burden of proof on all of these factors.

**Authority:**  *Morrison Knudsen Corp. v. Fireman's Fund Ins.*, 175 F.3d 1221, 1244, 1247 & 1248 (10th Cir. 1999).

**GIT's Objection:**   MK's instruction improperly suggests that liability has not been determined against MK.  The instruction also directs the jury to ignore GIT's witnesses.  The instruction improperly refers to delays where GIT has not incurred nor seeks damages for critical path delays.

**TENDERED BY MK**
**INSTRUCTION NO. 3.48 [REJECTED]**[28]

**Intervening Cause**

In order to award GIT an equitable adjustment, there must be no intervening incident to complicate or confuse the certainty of the result between the cause and the requested equitable adjustment.  In other words, the cause must produce the effect inevitably, not possibly or even probably.

**Authority:** *SAB Constr., Inc. v. United States*, 66 Fed. Cl. 77, 88 (2005); *Hughes Communs. Galaxy, Inc. v. United States*, 271 F.3d 1060, 1071 (Fed. Cir. 2001); *Myerle v. United States*, 33 Ct. Cl. 1, 26 (1897).

**GIT's Objection:**   MK's instruction improperly attempts to limit MK's liability by requiring the damages MK caused be "inevitable."  This is an incorrect statement of the law.

---

[28]      ***Judge's Ruling:***  The proposed instruction muddles the issues of causation and appropriate burden of proof.  GIT must prove MK's conduct in complicating/etc. the work more likely caused than did not cause a specific additional cost of GIT.  The jury will have already been so instructed and MK may argue the issue of intervening cause as impacting those instructions at trial.

MK's TENDERED 3.50 [will not be given][29]

**Category 3 - Absent Entitlement to an Equitable Adjustment, GIT Shoulders the Responsibility for its Unexpected Losses and Cost Overruns**

GIT is not entitled to equitable adjustments merely because its work was more difficult than anticipated. In the absence of proving entitlement to an equitable adjustment, GIT shoulders the responsibility for its unexpected losses and cost overruns.

**Authority:** *Lear Siegler, Inc.*, 1981 ASBCA LEXIS 350, *139-140, 1981 WL 7139, 81-2 BCA P 15372, ASBCA No. 22235 (August 26, 1981) ("Where one agrees to do a thing possible to be performed for a fixed sum, he may not be excused or become entitled to additional compensation solely because unforeseen difficulties are encountered."); *Granite Constr. Co. v. United States*, 24 Cl. Ct. 735 (1991) (contractor's poor judgment with respect to method of construction does not give rise to excusable or compensable delay); *Gulf and Western Indus., Inc.*, 1987 ASBCA LEXIS 807, 1987 WL 40946, 87-2 BCA P 19881, ASBCA No. 21090 (May 13, 1987) (contractor's problems were created by its own unreasonable pre-bid assumptions and post-award actions and inactions, and it is an "established rule that a fixed price contractor shoulders the responsibility for unexpected losses, as well as for his failure to appreciate the problems of the undertaking.").

**GIT's Objection:** GIT's recoverable costs on a constructive termination for convenience are not based on fault. MK prevented GIT's performance by its improper termination. MK's instruction is incorrect as a matter of law.

---

[29] ***Judge's Comment***: This instruction is unnecessary and is the axiomatic result of any failure by GIT to prove entitlement. It is more properly the subject of argument than instruction.

**INSTRUCTION NO. 3.\* [based on MK's 3.51][30]**

**Category 3 - Performing the Work as Required by the Contract Does Not Entitle GIT to an Equitable Adjustment**

Direction from MK to GIT to perform work in accordance with the terms of the Contract is not a complication/acceleration/or augmentation of the work to be performed under the Contract entitling GIT to an equitable adjustment.  Similarly, merely directing GIT to improve its performance in order to insure completion of the Contract is not a complication/acceleration/or augmentation of the work entitling GIT to an equitable adjustment. GIT is not entitled to an equitable adjustment for that which it was required to do in the first place.

---

[30]     **Authority:** *Lathan Co. v. United States*, 20 Cl. Ct. 122, 128 (1990) (direction to perform work in accordance with the terms of the contract does not constitute a constructive change, and merely directing a contractor to improve performance in order to insure completion of the contract is not a constructive change); *Killgore Excavating*, 1988 AGBCA LEXIS 2, \*14, 1988 WL 44297, 88-2 BCA P 20523, AGBCA No. 87-397-3 (February 3, 1988) (a contractor "is not entitled to an equitable adjustment for that which he was required to do in the first place").

GIT's Objection:  MK's instruction improperly seeks to absolve MK from responsibility to pay for contract work if it is not an allowable equitable adjustment.  MK failed to pay for contract work and equitable adjustments.

*Judge's Ruling:*  GIT's objection is OVERRULED.

**TENDERED BY MK**
**INSTRUCTION NO. 3.52 [REJECTED as unnecessary and more the subject of argument than instruction]**

## <u>Proper Measure of Equitable Adjustments</u>

GIT claims to be entitled to various equitable adjustments to its original Subcontract price.  GIT claims that those equitable adjustments are on account of specific actions of MK that were inconsistent with the terms of the Subcontract between the parties or on account changes to the scope of GIT's work as described in the Subcontract which were ordered or caused by MK.

The proper measure of each equitable adjustment requested by GIT is the difference between what it would have cost to perform the work as originally required and what it cost to perform the work as changed.

Where the Subcontract includes a specific, bargained for a price for the work to be performed, that price is presumed to represent the reasonable cost of the original work. However, GIT may not use its bid price or a budget price to represent the cost to perform the work as originally required without proof that the budget or bid price was reasonable.

**Authority:**  *General Railway Signal Co. v. Washington Metropolitan Area Transit Authorities*, 875 F.2d 320, 324 (D.C. Cir. 1989).

**GIT's Objection:**   This instruction is unnecessary, irrelevant, and improper.   The instruction incorrectly presumes that MK's actions resulted in only equitable adjustments for bid items.  The instruction incorrectly applies presumptions to limit GIT's recovery.

**TENDERED BY GIT**
**INSTRUCTION NO. 3.53[31]**

**MK's Responsibility for Conduct of U.S. Department of Energy**

The United States Department of Energy ("DOE") hired MK-Ferguson as its construction manager on the Project.  MK-Ferguson contracted directly with DOE to manage the project, and MK was thus acting at the direction of the DOE on the Project.  GIT's subcontract with MK was for Slick Rock construction remediation work required by MK's contract with DOE.

There was no contract between GIT and the DOE.  Thus, GIT may not sue the DOE. GIT may sue MK for issues that arose from the conduct of the DOE, however, such as demands made by DOE on GIT, through MK.

MK is responsible to GIT for DOE's conduct because the law states that MK is responsible to all its lower-tier subcontractors, such as GIT, for the conduct of DOE.  This conduct would include issues which arose from work ordered to be performed by DOE, demands

---

[31]     **Authority**:  49.108-1 Federal Acquisition Regulations; *John A. Johnson & Sons, Inc. v. United States*, 153 F. 2d 534, 540-41 (4th Cir. 1946); *United States v. Piracci Const. Co., Inc.*, 405 F. Supp. 904, 905 n. 2 (Dist. Col. 1975).

**MK's Objection:**  MK objects to this instruction for various reasons.  First, there are no "demands made by DOE on GIT" that MK is aware of.  Second, this proposed instruction is an overgeneralization of what GIT believes MK's duties and responsibilities are.  The Subcontract addresses who, on behalf of MK, has authority to bind MK, and what MK's duties are.  Nowhere does the law states that MK is responsible to all its lower-tier subcontractors, such as GIT, for the conduct of DOE.

**GIT's Reply:**  This instruction is proper and correct as tendered.  The instruction mirrors the liability imposed on GIT due to the actions of MK that damaged RN Robinson and resulted in the Robinson Amended Judgment.

*Judge's Comment:*  I will reserve ruling on this instruction until the May 1 conference.

DOE made on GIT through MK, and directions DOE imposed regarding GIT's work.  Therefore, any conduct of DOE dealing with GIT's work that cause GIT increased costs is to be treated as the conduct of MK.

**TENDERED BY GIT**

**INSTRUCTION NO. 3.54[32]**

**Category 3 - GIT's Claim for Unpaid Contract Work and Retainage**

As part of the termination for convenience GIT claims entitlement to payment from MK

for contract work and retainage contemplated by the contract which has been due and owing

---

[32]     **Authority:** *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F. 3rd 1221,
1243 n. 28 (10th Cir. 1999) undisputed that MK has not paid GIT; March 20, 2006 Order on
Pending Motions, p. 7, "MK has not yet paid."

**MK's Objection:** This instruction is improper, especially in light of the following
language from the Tenth Circuit Opinion:

> MK's failure to pay GIT for some of its work under the
> contract has nothing to do with whether MK caused GIT to
> incur roughly $3 million in additional costs unanticipated by
> the contract but recoverable as equitable adjustments.  MK
> allegedly caused GIT to incur those costs not by refusing to
> pay it for work, but by delaying the work or misinterpreting
> the specifications.  Similarly, MK's refusal to pay GIT for
> completed work has nothing to do with whether GIT proved
> that the additional costs for which GIT claimed equitable
> adjustments were reasonable.

*Morrison Knudsen Corp. v. Fireman's Fund Ins.*, 175 F.3d 1221, 1248 (10th Cir. 1999).
Additionally, GIT's termination-for-convenience claim (see instruction 3.1) subsumes any
category of cost claimed by GIT, including work performed.  Finally, GIT's own expert damages
witness, Mr. Fuchs, has not included a claim for damages caused by lack of payment.

**GIT's Reply:** MK's failure to promptly and properly pay GIT for performed work is a
legitimate grounds for an equitable adjustment.  MK's refusal to pay GIT undisputed amounts
hindered and complicated GIT's termination causing increased costs.  There is no basis to
insulate MK from responsibility for its unjustified failure to pay.  MK's nonpayment has been
ongoing for over ten (10) years and has clearly caused GIT increased costs.

**Judge's Ruling:** I will reserve final decision on this instruction until the May 1 conference,
but it will not be given if there is no evidence to support it.

since September 29, 1995.  GIT claims that MK's failure promptly to pay complicated, hindered, and increased the difficulty of GIT's work, causing increased costs for which it is entitled to an equitable adjustment.  To prevail on this claim, GIT must prove by a preponderance of the evidence that MK has failed to pay or credit GIT for contract work and retainage as required by the contract resulting in increased costs to GIT.

**TENDERED BY GIT**
**INSTRUCTION NO. 3.55 [Instruction is redundant and will not be given]**

**Equitable Adjustments – Changes**

GIT may seek an equitable adjustment to the contract to compensate for increased costs of performance flowing from changes that alter the work to be performed under the contract.

**Authority**: *Sterling Millwrights, Inc. v. United States*, 26 Cl. Ct. 49, 72 (Cl. Ct. 1992); *Bruce Construction Corp. v. United States*, 324 F. 2d 516, 518 (Ct. Cl. 1963).

**MK's Objection:** This proposed instruction is a gross understatement in what GIT has to prove in order to be entitled to a "change." "Change" is basically another way of saying "equitable adjustment." The Subcontract, at GP-52, addresses changes in detail. GIT's proposed instruction neither incorporates nor references this applicable Subcontract provision. Additionally, MK's proposed instructions instruct the jury on equitable adjustments *per* the Tenth Circuit's opinion.

**GIT's Reply:** This is a correct statement of the law. The provisions of GP-52 do not apply to constructive changes imposed by MK for which MK refused to issue contract change orders.

**TENDERED BY GIT**
**INSTRUCTION NO. 3.56 [likely to be REJECTED][33]**

**Equitable Adjustments – Cardinal Changes**

A cardinal change is a change beyond the scope of the contract.  A cardinal change is a substantial deviation  from the original scope of work that changes the nature of the bargain between the parties after giving just consideration to the magnitude and quality of the changes ordered and their cumulative effect upon the project as a whole.  A contractor is entitled to an equitable adjustment to the contract price for cardinal changes.

---

[33]     **Authority**: *Thermocor, Inc.. v. United States*, 35 Fed. Cl. 480, 490 (Fed. Cl. 1996); *Edward R. Marden Corp. v. United States*, 442 F. 2d 364, 369 (Ct. Cl. 1971).

**MK's Objection:**  This instruction is based on a breach-of-contract theory.  A cardinal change "constitutes a material breach of the contract." *Alliant Techsystems, Inc. v. U.S.*, 178 F.3d 1260, 1276 (Fed. Cir. 1999).  And any instruction based on a breach-of-contract theory is improper.

**GIT's Reply:**  MK imposed cardinal changes on GIT and its subcontractors thereby MK caused GIT increased costs (equitable adjustments).  Such an instruction is proper.  Equitable adjustments for cardinal changes are not "breach of contract" oriented.

***Judge's Ruling:***  I reserve final judgment on the "cardinal change as grounds for equitable adjustment" theory of relief but am inclined to reject it as unnecessary.  The instruction on the elements to be proved to be entitled to an equitable adjustment is broad enough to encompass this concept without suggesting it as a separate concept.  If "cardinal change" were included, instructions 1.1 and 3.2 would need to be altered accordingly.

**TENDERED BY MK**
**INSTRUCTION NO. 3.57 [REJECTED as unnecessary]**

<u>**No Breach of Subcontract**</u>

MK's termination of GIT was not a breach of the Subcontract between the parties.

**Authority:**  Order dated January 20, 2006, Document #592.

**GIT's Objection:**  This instruction is unnecessary, irrelevant, and immaterial.  There is no claim for breach of contract damages.

**TENDERED BY GIT**
**INSTRUCTION NO. 3.58 [probably REJECTED as unnecessary][34]**

**Equitable Adjustments – Constructive Change**

A constructive change occurs where GIT performs work beyond the contract requirements, without a formal order under the contract changes clause, either by an informal order of MK or by fault of MK.  If MK either expressly or impliedly ordered work outside the scope of the contract, or if MK otherwise caused the contractor to incur additional work, a constructive change arises for that work performed outside the scope of the contract.  The constructive change doctrine provides a means for GIT's recovery.

---

[34]      **Authority**: *Miller Elevator Company, Inc. v. United States*, 30 Fed. Cl. 662, 678 (Fed. Cl. 1994).

**MK's Objection:**  MK objects to this instruction, as it is incomplete, and thus an incorrect statement of law.  This proposed instruction completely misstates what the subcontract requires for a constructive change.  MK's proposed instruction covers this topic, and is based on GP-52 of the Subcontract.

**GIT's Reply:**  MK's objection is meritless. MK improperly seeks to avoid responsibility for changes imposed on GIT although MK refused to allow changes per GP-52 or comply with the terms of GP-52.  Changes are not limited in the manner argued by MK.

*Judge's Ruling*:  Unless the parties agree the "constructive" change is an element for recovery on an equitable adjustment claim – in which case the elements instruction at 3.* will need to be modified – the term is simply a different way of articulating the conduct necessary to state a claim for such an adjustment.  MK either causes complications, accelerations, delay, or augmentation of work (i.e., "constructive" changes) and those changes "cause" GIT to incur cost increases or it doesn't.  I will reserve ruling on this instruction until the May 1, conference, but am disinclined to give it.

**TENDERED BY MK**
**INSTRUCTION NO. 3.59 [likely to be REJECTED as unnecessary]**

**Notice of Constructive Change**

GIT contends that certain directions and orders that it received from MK entitle GIT to equitable adjustments. An order (including direction, instruction, interpretation, or determination) from MK can only be considered a constructive change order entitling GIT to an equitable adjustment if GIT proves all of the following:

1.      GIT gave written notice to MK stating:

      a.      the date, circumstances, and source of the order from MK; and

      b.      that GIT regards the order as a change order.

Except for an adjustment based on defective specifications, the written notice required by this section must be made no later than 20 days after the cost was incurred.

2.      Within 30 days after notifying MK as required in section 1 above, GIT submitted to MK's Subcontract Administrator a written statement describing the general nature and amount of GIT's proposal for equitable compensation.

**Authority:**  Subcontract at GP-52.

**GIT's Objection:**   This instruction is unnecessary, irrelevant, and improper.   The contract provisions in GP-52 are not pertinent to a "constructive change."  These GP-52 contract changes "shall be treated as a change order."  MK refused to issue any GIT change orders on the Slick Rock project.

**TENDERED BY GIT**
**INSTRUCTION NO. 3.60 [REJECTED]**

**<u>Category 3 - Equitable Adjustments – Implied Duty of Good Faith</u>**

The duty of good faith and fair dealing is implied in every Government contract.


**Authority**:   *Detroit Housing Corp.. v. United States*, 55 Fed. Cl. 410, 417 (Fed. Cl. 2003).


**MK's Objection:**   This proposed instruction is based on a breach-of-contract theory of recovery, which the Court has already ruled is not proper.   GIT was unable to prove that MK breached the subcontract, and was unable to prove bad faith.

**GIT's Reply:**   MK failed to comply with its implied duties and thereby MK caused GIT increased costs (equitable adjustments).   Such an instruction is proper.

**TENDERED BY MK**
**INSTRUCTION NO. 3.61 [REJECTED - unnecessary]**

<u>**No Bad Faith**</u>

MK's termination of GIT was not in bad faith.

**Authority:**  Order dated January 20, 2006, Document #592.

**GIT's Objection:**  This instruction is immaterial and irrelevant.  GIT has no claim for

bad faith damages pursuant to prior court orders.

**TENDERED BY GIT**
**INSTRUCTION NO. 3.62 [REJECTED]**

**Equitable Adjustments – Implied Obligation Against Hindrance**

Every contract with the government contains an implied obligation that neither party will do anything to prevent, hinder, or delay performance.  Therefore, if MK's actions or inactions hinder performance and increase costs, GIT has a viable claim to recover those extra costs.

**Authority**:  *Sterling Millwrights, Inc. v. United States*, 26 Cl. Ct. 49, 67 – 68 (Cl. Ct. 1992).

**MK's Objection:**  This proposed instruction is based on a breach-of-contract theory of recovery, which the Court has already ruled is not proper.   Additionally, MK's proposed instructions concerning equitable adjustments properly instruct the jury on the law applicable to equitable adjustment claims to the extent they are based on alleged hindrance or delay.

**GIT's Reply:**  MK failed to comply with its implied duties and thereby MK caused GIT increased costs (equitable adjustments).  Such an instruction is proper.

**TENDERED BY GIT**
**INSTRUCTION NO. 3.63 [REJECTED]**

**Equitable Adjustments – Implied Duty to Disclose**

Under the implied duty of good faith and fair dealing, MK maintains an implied duty to disclose information fundamental to the contract performance.  Where MK possesses special knowledge not shared by GIT, which is vital to the performance of the contract, MK has an affirmative duty to disclose such knowledge.  MK cannot remain silent.

**Authority**:  *Miller Elevator Company, Inc.. v. United States*, 30 Fed. Cl. 662, 674-75 (Fed. Cl. 1994).

**MK's Objection:**  This proposed instruction is based on a breach-of-contract theory of recovery, which the Court has already ruled is not proper.

**GIT's Reply:**  MK failed to comply with its implied duties and thereby MK caused GIT increased costs (equitable adjustments).  Such an instruction is proper.

**TENDERED BY MK**
**INSTRUCTION NO. 3.64 [REJECTED as unnecessary & duplicative]**

**Compensable Delays**

GIT claims that it is entitled to certain equitable adjustments due to delays allegedly caused by the actions or inactions of MK.  For each alleged delay that GIT contends was caused by MK, GIT must prove the following:

1.     The delay was unforeseeable;

2.     The cause of the delay was beyond the control of GIT;

3.     The cause of the delay was without the fault of GIT;

4.     The cause of the delay was without the negligence of GIT;

5.     GIT gave notice to MK of the cause of the delay within 10 days of the beginning of the delay;

6.     The delay was a "critical delay."  A critical delay is one which would delay not just the particular activity at issue, but the overall completion date of the Work.  Many activities may be performed on a project at any time without any effect on the completion of the project. A delay in such non-critical activities will not delay the project overall and cannot constitute an excusable delay.  Only delays to activities on the critical path -- activities with no leeway in the schedule -- may give rise to excusable delay.

7.     That MK caused the delay in a manner unauthorized by the contract;

8.     That the conduct of MK allegedly giving rise to the delay in question was wrongful; and

9.     That the delay in question was caused solely by such wrongful conduct.  In other words, if the particular delay would have occurred even without the conduct of MK, then GIT is

not entitled to an equitable adjustment for the alleged delay.

**Authority:**   The Tenth Circuit made it clear that the jury should have been instructed regarding the necessity that a delay be on the critical path.  In fact, the Tenth Circuit stated that the following "proposed instruction [regarding the critical path requirement] thus accurately stated an applicable rule of law . . . .":

> [GIT must prove that] [t]he delay was a "critical delay."  A critical delay is one which would delay not just the particular activity at issue, but the overall completion date of the Work.   Many activities may be performed on a project at any time without any effect on the completion of the project.   A delay in such non-critical activities will not delay the project overall and cannot constitute an excusable delay.   Only delays to activities on the critical path -- activities with no leeway in the schedule -- may give rise to excusable delay.

*Morrison Knudsen Corp. v. Fireman's Fund Ins.*, 175 F.3d 1221, 1233 (10th Cir. 1999).

Further, the Tenth Circuit thoroughly established GIT's burden to prove delay.  *See id.*, 1247-48, 1261 (ordering that the Court on remand "instruct the second jury to examine each of GIT's equitable-adjustment claims based on delay").   "The jury must determine whether MK caused each delay in a manner unauthorized by the contract." *Id.* at 1261.

The legal support for this proposed instruction is as follows:

(1) foreseeability--*Hannon Elec. Co. v. United States*, 31 Fed. Cl. 135, 143 (1994); *RFI Shield-Rooms*, ASBCA No. 17374, 1977 ASBCA LEXIS 229.

(2), (3) and (4) beyond the control, without fault or negligence--GP-56B(1); *Hannon*; *Switlik Parachute Co. v. United States*, 216 Ct. Cl. 362, 537 F.2d 1228 (1978); *RFI Shields-Rooms*.

(5) notice GP-56B(2); *McDevitt & Street Co. v Marriott Corp.*, 713 F. Supp. 906, 926 (E.D. Va. 1989); *Emlyn T. Linkous*, GSBCA No. 3832, 1974 GSBCA LEXIS 70 (1974); *Ardelt-Horn Constr. Co.*, ASBCA No. 14550, 1973 ASBCA LEXIS 230 (1973); *Volta Electric Co., Inc.*, NASA BCA No. 39, 1963 NASA BCA LEXIS 12 (1963).

(6) critical delay -- *Morrison Knudsen Corp. v. Fireman's Fund Ins.*, 175 F.3d 1221, 1233 (10th Cir. 1999); *George A. Fuller Co.*, ASBCA 9590 (1964); *Essential Constr. Co.*, ASBCA 18491 (1978); *AB-Tech Constr. Co. Inc.*, VABCA No. 1531, 1982 VABCA LEXIS 12; *Haney v. United States*, 676 F.2d 584 (Ct. Cl. 1982).

(7) and (8) MK caused the delay in a manner unauthorized by the contract -- *Morrison Knudsen Corp. v. Fireman's Fund Ins.*, 175 F.3d 1221, 1261 (10th Cir. 1999).

(9) caused solely by MK -- *Callison Constr. Co.*, AGBCA No. 88-309-1, 1992 AGBCA LEXIS 22 (1992); *Schma1z Constr. Ltd.*, AGBCA Nos. 86-207-1, 86-229-1, 86-255-1, 1991 AGBCA LEXIS 36 (1991); *Killgore Excavating. Inc.*, AGBCA No. 87-3'97-3, 1988 AGBCA

LEXIS 2, (1988); *Roy D. Garrrren Corp.*, AGBCA No. 85-196-1, 1990 AGBCA LEXIS 33 (1990); *Metro-Tel*, ASBCA No. 8471, 1964 ASBCA LEXIS 892 (1964); *Titan Pacific Constr. Corp.*, ASBCA No. 24148, 1987 ASBCA LEXIS 954 (1987); *R-W Contracting Corp.*, ASBCA No. 25459, 1984 ASBCA LEXIS 371 (1984); *American Astro-Systems. Inc.*, ASBCA Nos. 9008 and 9565, 1966 ASBCA LEXIS 446 (1966).

**GIT's Objections:**   This instruction is unnecessary, irrelevant, and improper.   GIT has no claims for critical path delays.  See March 20, 2006 Order on Pending Motions, p. 10 – 11; and *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F. 3rd 1221, 1238, n. 17 (10th Cir. 1999).

*Judge's Ruling:*   GIT's Objection is SUSTAINED.   Delay as basis for equitable adjustment is contemplated by Instruction 3.* setting forth elements of such a claim.

**TENDERED BY MK**
**INSTRUCTION NO. 3.65 [REJECTED][35]**

**Concurrent Delays**

If both MK and GIT contributed to a delay, then GIT cannot recover its costs for the delay unless it proves a clear apportionment of the delay and the expenses attributable to each party.   You must deny GIT recovery where the delays are concurrent and GIT has not established its delay apart from that attributable to MK.

**Authority:**   *CJP Contractors, Inc. v. U.S.*, 45 Fed. Cl. 343, 372  (1999).

**GIT's Objections:**   This instruction is unnecessary, irrelevant, and improper.   GIT has no claims for critical path delays.   See March 20, 2006 Order on Pending Motions, p. 10 – 11; and *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F. 3rd 1221, 1238, n. 17 (10th Cir. 1999).

---

[35]    ***Judge's Ruling:***   Causation requirement for obtaining equitable adjustment renders this instruction unnecessary.

**TENDERED BY MK**
**INSTRUCTION NO. 3.66 [inclined to REJECT][36]**

**Delays Caused by Weather**

The Subcontract plainly forbids any award of additional costs to GIT for delays caused by weather.

**Authority:**  *Morrison Knudsen Corp. v. Fireman's Fund Ins.*, 175 F.3d 1221, 1243 n.27 (10th Cir. 1999).

**GIT's Objections:**  This instruction is unnecessary, irrelevant, and improper.  GIT has no claims for critical path delays due to weather.

---

[36]    ***Judge's Ruling:***  If GIT asserts no claim for equitable adjustment based on delays caused by weather, instruction is unnecessary.

**TENDERED BY MK**
**INSTRUCTION NO. 3.67  [REJECTED, GIT's Objection SUSTAINED]**

<u>**Constructive Acceleration**</u>

To the extent GIT contends that its performance was constructively accelerated by MK, GIT must prove five elements:   First, there must be an excusable delay.   Second, MK must have had knowledge of the delay.   Third, MK must have acted in a manner which reasonably can be construed as an order to accelerate.   Fourth, GIT must have given notice to MK that the order to accelerate amounts to a constructive change.   Fifth, GIT must have actually accelerated and thereby incurred added costs.

**Authority:**  *Fru-Con Construction Corp. v. United States*, 43 Fed. Cl. 306, 328 (1999).

**GIT's Objections:**  This instruction is unnecessary, irrelevant, and improper.  GIT has no claims for construction acceleration or critical path delays.  MK directed GIT to accelerate its work.  There was no constructive acceleration.

**INSTRUCTION NO. 3.\* [premised on GIT's TENDERED 3.68][37]**

**Category 3 - Equitable Adjustments – Overhead**

GIT is entitled to recover reasonable overhead on its equitable adjustments.

---

[37]        **Authority:**  March 31, 2006 Order Continuing Trial, at p. 9, paragraph 3.

**MK's Objection:**   GIT has no support in the FAR or the Subcontract for this proposed
instruction.  Additionally, some of GIT's equitable adjustment claims already include overhead
components, such as additional home office personnel.  Thus, increasing these costs to include
overhead once again would clearly result in duplication.  Finally, there no reason why GIT's
equitable adjustment claims for items such as leaving behind equipment, fake plants, chairs,
tables, water coolers, and the like for MK to use in finishing out the project should be increased
to include overhead.  Several of GIT's equitable adjustment claims include post-termination
costs.  After GIT's termination, GIT was free to contract again, and to absorb its overhead with
new projects.

**GIT's Reply:**  This instruction is a correct statement of the law and is fully in accordance
with the body of law applicable to procurement of goods and services by the Government.  See
GP-41, MK-GIT Contract.  MK's objection is factually and legally incorrect.

*Judge's Ruling:*   The inclusion of *reasonable* overhead is contemplated by the Tenth
Circuit's opinion remanding case.  MK's objections go to reasonableness of GIT's request, and
can be argued to the jury.

**TENDERED BY MK**
**INSTRUCTION NO. 3.69 [REJECTED under the category of "overkill" and gratuitousness]**

**Recovery of Home-Office Overhead**

In order to recover home office overhead costs GIT must prove each of the following:

1.      MK delayed performance of the Subcontract and this delay was not concurrent with another delay caused by a different source;

2.      GIT finished the project later than expected; and

3.      MK required GIT to remain on standby during the delay.

In order to prove that it was on standby, GIT must prove:

1.      MK caused delay of an indefinite period;

2.      MK required GIT to be able to resume work at full speed and immediately; and

3.      GIT did not perform much, if any, work during the suspension, and was not receiving payment.

*Authority:*  P.J. Dick, Inc. v. Principi, 324 F.3d 1364 (Fed. Cir. 2003).

*GIT's Objection:*  This instruction is immaterial and irrelevant because GIT does not seek extended home office overhead for critical path delays.  GIT did not suffer critical path delays on the project.  See March 20, 2006 Order on Pending Motions, p. 10 – 11; and *Morrison Knudsen Corp. v. Fireman's Fund Insurance Corp.*, 175 F. 3d 1221, 1238, n. 17 (10th Cir. 1999).

**INSTRUCTION NO. 3.\* [based on GIT's TENDERED 3.70][38]**

**Equitable Adjustments – Profit**

GIT is entitled to a fair and reasonable profit on its equitable adjustments.  Factors to consider in determining reasonableness are the same as those identified in Instruction 3.\*, on Category 1(c) profits on actual costs of work performed.

---

[38]    **Authority**:  *Delco Electronics Corp.. v. United States*, 17 Cl. Ct. 302, 334 (Cl. Ct. 1989).

**MK's Objection:**  MK objects to this instruction, as it is incomplete, and thus an incorrect statement of law.  Both parties have each submitted proposed instructions that cover the topic of profit.  There is no reason to additionally instruct the jury that GIT is entitled to profit on equitable adjustments.  In fact, such a broad overgeneralization is an incorrect statement of law.  Profit is allowed only on certain categories of costs, as detailed in instruction 3.1.

**GIT's Reply:**  GIT is entitled to recover profit on equitable adjustments.  This is a correct statement of the law.

*Judge's Ruling*:  MK's objection is OVERRULED.

**TENDERED BY MK**
**INSTRUCTION NO. 3.71 [REJECTED - GIT's Objection is SUSTAINED]**

**Rock Excavation and Classification**

For rock excavation and classification, GIT was required to follow the uncovering and classification procedure identified in paragraph 1.4(D)(1) of the Subcontract.

**Authority:**  Memorandum Opinion and Order, October 31, 1996, at p.8.

**GIT's Objection:**   This instruction is unnecessary and irrelevant.   See *Linan-Faye Construction Co., Inc. v. Housing Authority of City of Camden*, 49 F. 3d 915, 930-931 (3rd Cir. 1995), a constructive termination for convenience renders any misunderstanding of specifications irrelevant.   Contract specifications are not material where argument as to which party is in default is mooted by constructive termination for convenience doctrine.

This instruction could only be applicable if it added: "GIT is entitled to recover its reasonable, allowable, and allocable costs for performing this work."

**TENDERED BY MK**
**INSTRUCTION NO. 3.72 [REJECTED - GIT's Objection is SUSTAINED]**

**Vehicle Decontamination**

Subcontract provision SC-8(H)(1) clearly and unambiguously requires GIT to clean vehicles of all potentially contaminated visible soil when said vehicles are to be removed from radiologically controlled areas.

**Authority:**   Memorandum Opinion and Order, October 31, 1996, at p.11-13.

**GIT's Objection:**   This instruction is unnecessary and irrelevant.   See *Linan-Faye Construction Co., Inc. v. Housing Authority of City of Camden*, 49 F. 3d 915, 930-931 (3rd Cir. 1995), a constructive termination for convenience renders any misunderstanding of specifications irrelevant.   Contract specifications are not material where argument as to which party is in default is mooted by constructive termination for convenience doctrine.

This instruction could only be applicable if it added "GIT is entitled to recover its reasonable, allowable, and allocable costs for performing this work."

**Section 4.0**

**Final Instructions**

99

**INSTRUCTION NO. 4.1**

**Jury Deliberations – General Instructions**

Each of you has a copy of the instructions to consult as you find it necessary.  You may keep your copy throughout the trial and in your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts, you must apply and follow the law as I give it to you whether you agree with it or not.  You must base your verdict upon the evidence.  You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means you must decide the case solely on the evidence before you and according to the law as I give it to you.  You have taken an oath promising to do just so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions or into anything I may say or do any suggestions as to what verdict you should return.  Your verdict is a matter entirely for you to decide.

## INSTRUCTION NO. 4.2

### <u>Jury – Evidence Excluded</u>

In reaching your verdict you may consider only the testimony and exhibits received into evidence.  The following things are not evidence and you may not consider them in deciding what the facts are:

      1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of the facts controls.

      2.      Questions and objections by lawyers are not evidence.  Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.

      3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, I have allowed some testimony or exhibits only for a limited purpose, and you must consider such only for that limited purpose.

      4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received during the trial.

**Authority:**  Court's Standard Instruction attached to March 1, 2004 Minute Order.

**INSTRUCTION NO. 4.3**

**<u>Jury – Deliberations</u>**

When you go to the jury room to begin your deliberations, you must elect one member of the jury as your Presiding Juror.  He or she will preside over your deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreements if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it with your fellow jurors, and listened to the views of your fellow jurors.  I offer some suggestions on how you might do this in the next jury instruction, entitled "Jury - The Deliberations Process."

Do not be afraid to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict, but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight of the evidence simply to reach a verdict.

## INSTRUCTION NO. 4.4

### Jury – The Deliberation Process

Once you have elected your Presiding Juror as directed by the previous instruction, you are free to proceed as you agree is appropriate. Therefore, I am not directing you how to proceed, but I offer the following suggestions that other juries have found helpful so that you can proceed in an orderly fashion, allowing full participation by each juror, and arrive at a verdict that is satisfactory to each of you.

First, it is the responsibility of the Presiding Juror to encourage good communication and participation by all jurors and to maintain fairness and order. Your Presiding Juror should be willing and able to facilitate productive discussions even when disagreements and controversy arise.

Second, the Presiding Juror should let each of you speak and be heard before expressing his or her own views.

Third, the Presiding Juror should never attempt to promote nor permit anyone else to promote his or her personal opinions by coercion or intimidation or bullying of others.

Fourth, the Presiding Juror should make certain that the deliberations are not rushed to reach a conclusion.

If the Presiding Juror you select does not meet these standards, he or she should voluntarily step down or be replaced by a majority vote.

After you select a Presiding Juror you should consider electing a secretary who will tally the votes, help keep track of who has or hasn't spoken on the various issues, make certain that all of you are present whenever deliberations are under way and otherwise assist the Presiding Juror.

Some juries are tempted at this point to hold a preliminary vote on the case before them to "see where we stand." It is most advisable, however, that no vote be taken before a full discussion is had on the issue to be voted on, otherwise you might lock yourself into a certain view before considering alternative and possibly more reasonable interpretations of the evidence. Experience has also shown that such early votes frequently lead to disruptive, unnecessarily lengthy, inefficient debate and ineffective decision-making.

Instead, I suggest the Presiding Juror begin your deliberations by directing the discussion to establishing informal ground rules for how you will proceed.  These rules should assure that you will focus upon, analyze and evaluate the evidence fairly and efficiently and that the viewpoints of each of you is heard and considered before any decisions are made.  No one should be ignored.  You may agree to discuss the case in the order of the questions presented in the special verdict form or in chronological order or according to the testimony of each witness. Whatever order you select, however, it is advisable to be consistent and not jump from one topic to another.

To move the process of deliberation along in the event you reach a controversial issue, it is wise to pass it temporarily and move on to the less controversial ones and then come back to it.  You should then continue through each issue in the order you have agreed upon unless a majority of you agrees to change the order.

It is very helpful, but certainly not required of you, that all votes be taken by secret ballot.  This will help you focus on the issues and not be overly influenced by personalities. Each of you should also consider any disagreement you have with another juror or jurors as an opportunity for improving the quality of your decision and therefore should treat each other with respect.  Any differences in your views should be discussed calmly and, if a break is needed for

that purpose, it should be taken.

Each of you should listen attentively and openly to one another before making any judgment.  This is sometimes called "active listening" and it means that you should not listen with only one ear while thinking about a response.  Only after you have heard and understood what the other person is saying should you think about a response.  Obviously, this means that, unlike TV talk shows, you should try very hard not to interrupt.  If one of your number is going on and on, it is the Presiding Juror who should suggest that the point has been made and it is time to hear from someone else.

You each have a right to your individual opinion, but you should be open to persuasion.  When you focus your attention and best listening skills, others will feel respected and, even while they may disagree, they will respect you.  It helps if you are open to the possibility that you might be wrong or at least that you might change your mind about some issues after listening to other views.

Misunderstanding can undermine your efforts.  Seek clarification if you do not understand or if you think others are not talking about the same thing.  From time to time the Presiding Juror should set out the items on which you agree and those on which you have not yet reached agreement.

In spite of all your efforts, it is indeed possible that serious disagreements may arise.  In that event, recognize and accept that "getting stuck" is often part of the decision-making process.  It is easy to fall into the trap of believing that there is something wrong with someone who is not ready to move toward what may be an emerging decision.  Such a belief is not helpful.  It can lead to focusing on personalities rather than the issues.  It is best to be patient with one another.  At such times slower is usually faster.  There is a tendency to set deadlines and seek to force

decisions.  Providing a break or more time and space, however, often helps to shorten the overall process.

You may wish from time to time to express your mutual respect and repeat your resolve to work through any differences.  With such a commitment and mutual respect, you will most likely render a verdict that leaves each of you satisfied that you have indeed rendered justice.

# INSTRUCTION NO. 4.5

## Communications with Judge

If it becomes necessary during your deliberations to communicate with me, you may send a folded note through the court security officer, signed by one of you.  Do not disclose the content of your note to the court security officer.   No member of the jury should hereafter attempt to communicate with me except by signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  You are not to tell anyone - including me - how the jury stands, numerically or otherwise, until you have reached a unanimous verdict or I have discharged you.

If you send a note to me containing a question or request for further direction, please bear in mind that responses take considerable time and effort.  Before giving an answer or direction I must first notify counsel and bring them back to the court.  I must confer with them, listen to arguments, research the legal authorities, if necessary, and reduce the answer or direction to writing.

There may be some question that, under the law, I am not permitted to answer.  If it is improper for me to answer the question, I will tell you that.  Please do not speculate about what the answer to your question might be or why I am not able to answer a particular question.

In some instances jurors request that certain testimony be read to them.  This cannot be done as it is inappropriate for the court to single out testimony.  In those circumstances you must rely upon your own recollection.

**INSTRUCTION NO. 4.6**

**Unanimous Agreement and Jury Verdict Form**

You will each have a copy of a document called a Jury Verdict Form.  You are instructed to answer the questions in the Jury Verdict Form as directed in that form.  You must reach unanimous agreement on the answers to each of the questions you are directed in the form to answer.  Upon arriving at an agreement, your Presiding Juror will insert each answer on the Jury Verdict Form.  After all of the questions have been answered as directed by the Jury Verdict Form, your Presiding Juror will date the Jury Verdict Form, sign it, and then ask all of the other jurors to sign it.

After you have filled out the Jury Verdict Form in this manner, your Presiding Juror should advise the court security officer stationed outside the jury room that you have reached a verdict.

**INSTRUCTION NO. 4.7**

**<u>Jury Verdict Form(s) – Instructions</u>**

You are instructed to answer the questions set out on the attached Jury Verdict Form. You must all agree on the answers to each of the questions.  Upon arriving at an agreement, your foreman will insert your answers on the verdict form, date it, and then he or she and all other jurors will sign it.

**Section 5.0**

**Jury Verdict Form(s)**

*Judge's Note:* **Verdict Forms will not be finalized until after all theories of the case and objections have been resolved and instructions finally determine.**

**TENDERED BY GIT**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge John L.  Kane

Civil Action No.  **95-cv-2510-JLK-BNB**

**MORRISON KNUDSEN CORPORATION,**
**d/b/a MK-FERGUSON COMPANY, an Ohio corporation,**

Plaintiff and Counterclaim Defendant,

v.

**GROUND IMPROVEMENT TECHNIQUES, INC., a Florida corporation,**

Defendant and Counterclaim Plaintiff.

---

**JURY VERDICT FORM**

---

We, the jury, present our Answers to the Questions submitted by the Court, to which we have all agreed:

**I.    CATEGORY 1**

A.    Please determine the total amount (without duplication of any items) of reasonable, allowable, and allocable costs for work performed under the MK-GIT contract, before the effective date of termination, that MK proximately caused GIT to incur for:

1.    The costs of the Slick Rock project work:

$_____

B.    Please determine the cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the MK-GIT contract, as set forth below:

1.    Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay reasonable, allowable, and

allocable subcontractor settlement costs for Bogue Construction, Inc.?

YES _____          NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____

2.      Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay reasonable, allowable, and allocable subcontractor settlement costs for GA Western?

YES _____          NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____

3.      Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay reasonable, allowable, and allocable subcontractor settlement costs for Keers?

YES _____          NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____

4.      Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay reasonable, allowable, and allocable subcontractor settlement costs for R.N. Robinson & Sons, Inc.?

YES _____          NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____

    C.      Please determine the amount of profit, if warranted, that MK is liable to GIT for the costs of the Slick Rock project work set forth in paragraph A1 above, if any.

$_____$

        1.      Is MK's liability to pay GIT's profit excused because GIT was properly subject to a loss adjustment?

YES _____      NO _____

## II.    CATEGORY 2

    A.      Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay reasonable, allowable, and allocable accounting, legal, clerical, and other termination preparation settlement costs incurred by GIT for its settlement proposals to MK?

YES _____      NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____$

    B.      Please determine costs associated with the termination of and settlement with lower-tier subcontractors, as set forth below:

        1.      Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay reasonable, allowable, and allocable accounting, legal, clerical, and other termination preparation settlement and lawsuit costs of GIT's for Bogue Construction, Inc.?

YES _____      NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____$

        2.      Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay reasonable, allowable, and allocable accounting, legal, clerical, and other termination preparation settlement costs of GIT's for GA Western?

YES _____      NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____

3.      Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay reasonable, allowable, and allocable accounting, legal, clerical, and other termination preparation settlement and lawsuit costs of GIT's for Keers?

YES _____          NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____

4.      Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay reasonable, allowable, and allocable accounting, legal, clerical, and other termination preparation settlement and lawsuit costs of GIT's for R.N. Robinson & Sons, Inc.?

YES _____          NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____

5.      Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay reasonable, allowable, and allocable accounting, legal, clerical, and other termination preparation settlement and lawsuit costs of GIT's for Fireman's Fund?

YES _____          NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____

C.      Do you find the Counterclaim Defendant MK liable for proximately causing damage to GIT by failing to pay costs for storage, transportation, and other expenses reasonably incurred that were allowable, allocable, and reasonably

necessary for the preservation, protection, or disposition of the termination inventory and equipment?

YES _____          NO _____

If yes, please quantify the amount of such damage proximately caused by MK:

$_____

## III.   CATEGORY 3

A.   Please determine the amount of any cost increases (equitable adjustments) caused by MK and, if warranted, include any overhead and reasonable profit you find that GIT is entitled, as set forth below:

1.   Do you find Counterclaim Defendant MK liable for proximately causing damage to GIT by increasing the amount of difficulty of the work, accelerating, augmenting, or complicating GIT's work such that MK is thereby specifically responsible for increased equitable adjustment costs for excess GIT management?

YES _____          NO _____

If yes, please quantify the reasonable amount of such equitable adjustment that you find allowable and allocable to the contract as recoverable by GIT:

$_____

2.   Do you find Counterclaim Defendant MK liable for proximately causing damage to GIT by increasing the amount of difficulty of the work, accelerating, augmenting, or complicating GIT's work such that MK is thereby specifically responsible for increased equitable adjustment costs for interferences with GIT?

YES _____          NO _____

If yes, please quantify the reasonable amount of such equitable adjustment that you find allowable and allocable to the contract as recoverable by GIT:

$_____

3.      Do you find Counterclaim Defendant MK liable for proximately causing damage to GIT by increasing the amount of difficulty of the work, accelerating, augmenting, or complicating GIT's work such that MK is thereby specifically responsible for increased equitable adjustment costs for asbestos debris issues?

YES _____          NO _____

If yes, please quantify the reasonable amount of such equitable adjustment that you find allowable and allocable to the contract as recoverable by GIT:

$_____

4.      Do you find Counterclaim Defendant MK liable for proximately causing damage to GIT by increasing the amount of difficulty of the work, accelerating, augmenting, or complicating GIT's work such that MK is thereby specifically responsible for increased equitable adjustment costs for termination issues?

YES _____          NO _____

If yes, please quantify the reasonable amount of such equitable adjustment that you find allowable and allocable to the contract as recoverable by GIT:

$_____

5.      Do you find Counterclaim Defendant MK liable for proximately causing damage to GIT by increasing the amount of difficulty of the work, accelerating, augmenting, or complicating GIT's work such that MK is thereby specifically responsible for increased equitable adjustment costs for unjustified weather work stoppages?

YES _____          NO _____

If yes, please quantify the reasonable amount of such equitable adjustment that you find allowable and allocable to the contract as recoverable by GIT:

$_____

6.     Do you find Counterclaim Defendant MK liable for proximately causing damage to GIT by increasing the amount of difficulty of the work, accelerating, augmenting, or complicating GIT's work such that MK is thereby specifically responsible for increased equitable adjustment costs for North Continent impact issues?

YES _____     NO _____

If yes, please quantify the reasonable amount of such equitable adjustment that you find allowable and allocable to the contract as recoverable by GIT:

$_____

7.     Do you find Counterclaim Defendant MK liable for proximately causing damage to GIT by increasing the amount of difficulty of the work, accelerating, augmenting, or complicating GIT's work such that MK is thereby specifically responsible for increased equitable adjustment costs for contract issues?

YES _____     NO _____

If yes, please quantify the reasonable amount of such equitable adjustment that you find allowable and allocable to the contract as recoverable by GIT:

$_____

8.     Do you find Counterclaim Defendant MK liable for proximately causing damage to GIT by increasing the amount of difficulty of the work, accelerating, augmenting, or complicating GIT's work such that MK is thereby specifically responsible for increased equitable adjustment costs for quantity variation issues?

YES _____     NO _____

If yes, please quantify the reasonable amount of such equitable adjustment that you find allowable and allocable to the contract as recoverable by GIT:

$_____

9.    Do you find Counterclaim Defendant MK liable for proximately causing damage to GIT by increasing the amount of difficulty of the work, accelerating, augmenting, or complicating GIT's work such that MK is thereby specifically responsible for increased equitable adjustment costs for permit impact damages?

YES _____     NO _____

If yes, please quantify the reasonable amount of such equitable adjustment that you find allowable and allocable to the contract as recoverable by GIT:

$_____

10.    Do you find Counterclaim Defendant MK liable for proximately causing damage to GIT by increasing the amount of difficulty of the work, accelerating, augmenting, or complicating GIT's work such that MK is thereby specifically responsible for increased equitable adjustment costs for failing to properly pay GIT for the work performed and retainages?

YES _____     NO _____

If yes, please quantify the reasonable amount of such equitable adjustment that you find allowable and allocable to the contract as recoverable by GIT:

$_____

## IV.   GIT TOTAL DAMAGE AMOUNT WITHOUT DUPLICATION

A.    Please state the total amount of reasonable, allowable, and allocable damages from Category 1, plus Category 2, plus Category 3, without duplication, that GIT is entitled to recover from MK.

$_____

PLEASE SIGN THIS VERDICT FORM.

Dated this _____ day of May, 2006.

_____     _____
Presiding Juror                              Juror

_____          _____
Juror                                     Juror


_____          _____
Juror                                     Juror


_____          _____
Juror                                     Juror


_____          _____
Juror                                     Juror


_____          _____
Juror                                     Juror

# 3721702_v1

**TENDERED BY MK**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L.  Kane

Civil Action No.  **95-cv-2510-JLK-BNB**

**MORRISON KNUDSEN CORPORATION,**
**d/b/a MK-FERGUSON COMPANY, an Ohio corporation,**

Plaintiff and Counterclaim Defendant,

v.

**GROUND IMPROVEMENT TECHNIQUES, INC., a Florida corporation,**

Defendant and Counterclaim Plaintiff.

---

**JURY VERDICT FORM**

---

       We, the jury, present our Answers to the Questions submitted by the Court, to which we

have all agreed:

**I.     CATEGORY 1**

       A.     Please determine the total amount (without duplication of any items) of GIT's
              reasonable, allowable, and allocable costs for work performed under the MK-GIT
              contract prior to September 29, 1995:

              1.     GIT's cost of the work for the Slick Rock Project:

                     $_____

       B.     Please determine the cost, if any, of settling and paying termination settlement
              proposals under terminated subcontracts that are properly chargeable to the
              terminated portion of the GIT-MK contract, as set forth below:

              1.     Is GIT entitled to reasonable, allowable, and allocable subcontractor
                     settlement costs for Bogue Construction, Inc.?

                     YES _____     NO _____

If yes, please quantify the amount:

$_____

2.    Is GIT entitled to reasonable, allowable, and allocable subcontractor settlement costs for GA Western?

YES _____    NO _____

If yes, please quantify the amount:

$_____

3.    Is GIT entitled to reasonable, allowable, and allocable subcontractor settlement costs for Keers?

YES _____    NO _____

If yes, please quantify the amount:

$_____

4.    Is GIT entitled to reasonable, allowable, and allocable subcontractor settlement costs for R.N. Robinson & Sons, Inc.?

YES _____    NO _____

If yes, please quantify the amount:

$_____

C.    Please quantify the amount of profit, if warranted, that GIT is entitled to for the costs of the Slick Rock project work set forth in paragraph A1 above, if any.

1.    Is MK's liability to pay GIT's profit excused because GIT was properly subject to a loss adjustment?

YES _____    NO _____

If yes, please quantify the amount:

$_____

## II.    CATEGORY 2

A.    Is GIT entitled to reasonable, allowable, and allocable accounting, legal, clerical, and other termination preparation settlement costs (excluding the settlements themselves) incurred by GIT for its settlement proposals to MK?

YES _____          NO _____

If yes, please quantify the amount:

$_____

B.    Please determine the costs, if any,  associated with the termination of and settlement with lower-tier Subcontractors, as set forth below:

1.    Is GIT entitled to reasonable, allocable, allowable costs associated with the termination and settlement of Bogue Construction, Inc., GA Western, Keers, and R.N. Robinson & Sons, Inc. (other than the settlements themselves)?

YES _____          NO _____

If yes, please quantify the amount:

$_____

C.    Is GIT entitled to reasonable, allowable, and allocable costs for storage, transportation, and other expenses reasonably necessary for the preservation, protection, or disposition of the termination inventory and equipment?

YES _____          NO _____

If yes, please quantify the amount:

$_____

## III.    CATEGORY 3

1.    Did GIT incur each of the additional specific costs listed below for excess management which were directly caused by MK, for which GIT is entitled to an

equitable adjustment?  If so, what is the reasonable, allocable, and allowable amount of each specific cost claimed by GIT as an equitable adjustment to the GIT-MK contract for excess management wrongly required by MK?  If GIT failed to meet its burden as to any specific cost below, your answer should be zero as to that specific cost.

- Project Manager                          Answer:       $_____
- General Superintendent              Answer:       $_____
- Office Manager                           Answer:       $_____
- Safety Representative                  Answer:       $_____
- Project Engineers - 2                   Answer:       $_____
- Scheduler – full time                   Answer:       $_____
- Site Superintendents - 3             Answer:       $_____
- Assist. Safety Rep -2 full time     Answer:       $_____
- Site Foreman - 3                          Answer:       $_____
- Office Clerks - 3                          Answer:       $_____
- Emergency Medical
  Technicians – 3                           Answer:       $_____

- First Responder – 1                     Answer:       $_____
- Home Office Administrator -
  Full time                                       Answer:       $_____

- Home Office Clerk – 2                 Answer:       $_____
- Mechanic – 3                               Answer:       $_____
- Shop Foreman                             Answer:       $_____
- Oilers – 4                                     Answer:       $_____
- Transportation Representative     Answer:       $_____

1. a.                                                    TOTAL:       $_____

2.   Did GIT incur each of the additional specific costs listed below for project interference directly caused by MK, for which GIT is entitled to an equitable adjustment?  If so, what is the reasonable, allocable, and allowable amount of each specific cost claimed by GIT as an equitable adjustment to the GIT-MK contract for wrongful project interference by MK?  If GIT failed to meet its burden as to any specific cost below, your answer should be zero as to that specific cost.

- Review and approval of
  Project submittals                    Answer:       $_____

- Removal and relocation of
  power lines                           Answer:       $_____

- Imposing schedule restrictions        Answer:       $_____

- Excessive dust control obligations     Answer:       $_____

2. a.                                              $___TOTAL:____

3.   Did GIT incur additional specific costs for removal of asbestos debris which were directly caused by MK, for which GIT is entitled to an equitable adjustment?  If so, what is the reasonable allocable, and allowable amount of the specific cost claimed by GIT for an equitable adjustment to the GIT-MK contract for removal of asbestos debris which was not part of the GIT-MK contract?  If GIT failed to meet its burden as to this cost, your answer should be zero.

ANSWER:          $_____

4.   Did GIT incur additional specific costs for weather delays for which GIT is entitled to an equitable adjustment?  If so, what is the reasonable, allocable, and allowable amount of the specific costs claimed by GIT for an equitable adjustment to the GIT-MK contract for weather delays incurred by GIT?  If GIT failed to meet its burden as to this cost, your answer should be zero.

ANSWER:          $_____

5.   Did GIT incur each of the additional specific costs listed below for North Continent impacts directly caused by MK, for which GIT is entitled to an equitable adjustment?  If so, what is the reasonable, allocable, and allowable amount of each specific cost claimed by GIT as an equitable adjustments to the GIT-MK contract for North Continent impact damages wrongfully caused by MK?  If GIT failed to meet its burden as to any specific cost below, your answer should be zero as to that specific cost.

- MK's inaccurate identification of
  contaminated areas at the NC site          Answer:        $_____

- Insistence on construction of
  decontamination facilities not specified
  in the GIT-MK contract                     Answer:        $_____

- Directive to remove above-ground
  vegetation in contaminated areas and
  manage it separately from the roots        Answer:        $_____

- MK's insistence that GIT use a
  non-specified method of clearing and
  grubbing                                   Answer:        $_____

- MK's demand that GIT obtain and
  utilize excavators to consolidate
  the tailings at the NC's project site      Answer:        $_____

5. a.                                        TOTAL:        $_____

6.      Did GIT incur each of the additional specific costs listed below for quantity variations directly caused by MK and for which GIT is entitled to an equitable adjustment?  If so what is the reasonable, allocable, and allowable amount of each of the specific costs claimed by GIT as an equitable adjustment to the GIT-MK contract?  If GIT failed to meet its burden as to any specific cost below, your answer should be zero as to that specific cost.

- Common vs. rock Excavation          Answer:        $_____

- NC contaminated materials quantity  Answer:        $_____

- Rejection of GIT's blasting and

  excavation plan                     Answer:        $_____

6. a.                                 TOTAL:        $_____

4

7.     Did GIT incur each of the additional specific costs listed below for permit impacts directly caused by MK, for which GIT is entitled to an equitable adjustment?  If so what is the reasonable, allocable, and allowable amount of each specific cost claimed by GIT as an equitable adjustment to the GIT-MK contract for permit impacts?  If GIT failed to meet its burden as to any specific cost below, your answer should be zero as to that specific cost.

- BLM 299 for BC Disposal

   Site Access                                       Answer:        $_____

- BLM 299 for Right of Way

   (roads & utilities)                             Answer:        $_____

- Stormwater permits and modifications   Answer:        $_____

- Air Emission (APEN) permit BC site      Answer:        $_____

- Air Emissions (APEN) permits and

   modifications NC/UC sites                  Answer:        $_____

- State Highway Access permit (BC site

   tailings haul)                                      Answer:        $_____

- State Highway Access permit (NC site

   tailings haul)                                      Answer:        $_____

- State Highway Access permit (UC site

   tailings haul- never received)             Answer:        $_____

7. a.                                                         TOTAL:       $_____


## IV.     GIT AWARD

A.     Please state the total amount of reasonable, allowable, and allocable amounts from Category 1, plus Category 2, plus all assets from Category 3, without

duplication, to which GIT is entitled.

$_____

PLEASE SIGN THIS VERDICT FORM.

Dated this _____ day of May, 2006.

_____          _____
Presiding Juror                           Juror

_____          _____
Juror                                     Juror

_____          _____
Juror                                     Juror

_____          _____
Juror                                     Juror

_____          _____
Juror                                     Juror

_____          _____
Juror                                     Juror

**GIT's Objection:**   MK's proposed verdict form fails to include several categories of GIT's damages.  The verdict form improperly attempts to complicate and confuse the jury by creating unnecessary and improper discreet categories requiring an unintelligible breakdown of GIT's damages.  For example, Category 3 is broken

6

down into at least forty-two (42) separate subcomponents.  The sole purpose for doing so can only be to complicate and confuse the jury.

3542687_1.DOC